**WALDEN BROS. LUMBER, INC., Respondent,**

v.

**Richard K. WIGGIN, et al., Appellants.**

**No. C1–86–1803.**

Court of Appeals of Minnesota.

June 30, 1987.

Review Denied Aug. 19, 1987.

Richard A. Emerick, Bloomington, for respondent.

Robert A. Nicklaus, Nicklaus & Fahey, Chaska, for appellants.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

SEDGWICK, Judge.

Walden Bros. Lumber, Inc., sued to recover debts incurred on an open account by its long-time customer Richard Wiggin, and/or Wiggin, Inc. Prior to trial, writs of attachment were issued against the assets of Richard Wiggin, Wiggin, Inc., and Sun West, Inc., based on information that Wiggin was transferring assets out of state. Richard Wiggin appeals from the judgment and denial of his motion for a new trial. Walden Bros. seeks review of the trial

court order denying attorney's fees and costs. We affirm in part, reverse in part and remand.

## FACTS

Richard Wiggin, a builder and real estate developer, purchased building supplies from Walden Bros. Lumber, Inc., since the 1960's. For years this open account, on which there was always an existing balance, was termed the "Dick Wiggin" account. When Walden Bros. switched to computer billing in 1982, the account was renamed by the lumber company the "Dick Wiggin, Inc." account (no such company existed). Richard Wiggin operated several corporations. He was the sole shareholder in Sun West, Inc., which handled land acquisitions. He was the dominant shareholder in Wiggin, Inc., which was involved in construction and the development of properties. Richard Wiggin and his wife operated a prosperous travel agency, Particular Tours, Inc. Money was transferred freely among the various corporate entities.

In the fall of 1981, Wiggin, Inc., began construction on two four-plex developments. Wiggin ordered his materials from Walden Bros., as he always did. His account's balance was $39,020.87 at that time. Wiggin told Walden Bros. he would pay off his current purchases and the balance due on the account as the four-plexes were sold. Payments were made, but the amounts were not sufficient to cover the new purchases, let alone to reduce the pre-existing account balance. In February 1981, Walden Bros. had started to charge 1% interest on each month's balance, later increased to 1½% in 1982 when the company switched to computer billing. Throughout the period from late 1981 to October 1982, Walden Bros. gave Wiggin blank lien waivers as a matter of course.

In 1982, two additional four-plexes were built. The account balance climbed. Wiggin's last payment was in October, 1982. Walden Bros. cut off credit in October, 1983. Payments were not made as promised when the property was sold, even though Wiggin and his corporations had significant income during this period. In 1984, he sold the La Vista Land Development Corp. for $296,000, yet made no payment on the account. When litigation was commenced, Walden Bros.' records indicated a total balance of $93,486.22.

The trial court found that Wiggin owed $68,144.02 for goods purchased. The principal, with interest, totaled $126,491.13 as of January 1986. The trial court ruled that the decision piercing the corporate veil of Wiggin, Inc., made at the attachment hearing in March, 1985 was binding on the court and that the judgment was properly the obligation of Wiggin, Wiggin, Inc., and Sun West, Inc.

## ISSUES

1. Was the trial court's decision to pierce the corporate veil justified?

2. Does the record support the award of damages?

3. Did the trial court err in failing to award respondent attorney's fees under Minn.Stat. § 549.21?

## ANALYSIS

The trial court determined as a conclusion of law that:

The Order * * * dated March 19, 1985, as to the piercing of the corporate veil is binding on this Court. The obligation of Richard K. Wiggin is the obligation of the defendant corporations, Wiggin, Inc. and Sun West, Inc. for the purposes of this lawsuit.

Judge Menke presided over the hearing on the writ of attachment which resulted in the order referred to above. Judge Goggins heard the trial on the merits. Appellants argue that they never agreed that the issues decided at the attachment hearing would be dispositive of those same issues at trial on the merits. They specifically object to the finding that the corporate veil of the corporations should be pierced in order to find multiple party liability for Richard Wiggin's debts.

Respondent argues that res judicata and collateral estoppel or law of the case doctrines should have applied to prevent the

retrial of those issues litigated after notice and hearing on the motion for writ of attachment. Respondent wants attorney's fees because appellants insisted on relitigation of the issues already decided by Judge Menke. Judge Goggins made the decision that he was bound by the earlier order only after all testimony from the attachment hearing was presented again before him.

We do not find either res judicata or law of the case doctrines applicable to estop or prevent a trial court from reconsideration of issues previously determined after a hearing on a writ of attachment. Nor do we find error in a trial court, after full reconsideration of evidence presented at the attachment hearing, choosing to be bound by findings previously issued by a different judge in the same action. The court could have taken judicial notice of the findings and order from the prior hearing.

■ The legal concept of res judicata is intended to prevent repetitious litigation. Res judicata contains two related concepts: claim preclusion (or res judicata) or issue preclusion (collateral estoppel). Claim preclusion, also known as merger or bar,

> operate[s] *where a subsequent action or suit* is predicated on the same cause of action which has been determined by a judgment, no matter what issues were raised or litigated in the original cause of action.

*Hauser v. Mealey,* 263 N.W.2d 803, 806 (Minn.1978) (emphasis added).

Collateral estoppel applies when *separate actions* involve different claims, but identical parties and issues. When issues essential to the decision in the initial action arise in a later action, they are deemed to have been concluded in the earlier action.

> [W]here the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it sought to apply the estoppel of a judgment rendered upon one cause of action to matters aris-

ing in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.

*Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 353, 24 L.Ed. 195 (1876).

Res judicata and collateral estoppel can only be applied where there has been a previous adjudication, that is, a judgment in a prior suit.

The doctrine of law of the case is distinct from the doctrines of res judicata and stare decisis, even though similar underlying policy considerations are involved. Law of the case applies most commonly to situations where an appellate court has passed on a legal question and remanded to the court below for further proceedings. The legal question thus determined by the appellate court will not be re-examined on a second appeal of the same case. *See Lange v. Nelson-Ryan Flight Service, Inc.,* 263 Minn. 152, 155–56, 116 N.W.2d 266, 269 (1962).

*Westbrook State Bank v. Johnson,* 407 N.W.2d 688 (Minn.Ct.App.1987).

In *Woods v. Benson Hotel Corp.,* 81 F.Supp. 46 (D.Minn.1948), the court observed:

> There is sound reason for the rule that the decision of either the trial or appellate court in granting or denying the temporary injunction does not constitute the law of the case and will not stop the parties nor the court as to the merits of the case. As said in *Walker Memorial Baptist Church v. Saunders, supra* (285 N.Y. 462, 35 N.E.2d [42] 47):
>
> > " 'The plaintiff urges upon this appeal that the law of the case was conclusively determined by the order of the Appellate Division affirming the granting of the temporary injunction since that order, it is argued, constitutes an adjudication that the complaint sets forth a good cause of action. A complete answer to this con-

tention is that the granting of a temporary injunction serves only to hold the matter in status quo until opportunity is afforded to decide upon the merits. The granting or refusal of a temporary injunction does not constitute the law of the case or an adjudication on the merits, and the issues must be tried to the same extent as though no temporary injunction had been applied for.' "

*Id.* at 49. This reasoning is equally applicable to the granting of the writ of attachment in this case.

■ Although the trial court here erroneously concluded that it was bound by the piercing of the corporate veils findings of the attachment hearing, it did so only after listening to several days of testimony on that issue. Based upon that fact and upon a record which clearly supports the finding, we find no reversible error here. At all times after 1982, Richard K. Wiggin claimed that Wiggin, Inc., had insufficient funds to pay Walden Bros. The checks received in evidence show that funds received by Wiggin, Inc., from properties being sold were moved to Particular Tours, Inc., Sun West, Inc., and the Dick Wiggin account, instead of being used to pay Walden Bros.

■ We find no merit to appellants' claim that respondents failed to prove an account stated or the amount and interest due thereon. Wiggin *never* challenged the monthly statements by Walden Bros., and Wiggin's allegation of a $21,000 overcharge was not supported by the evidence.

■ Respondents claim attorney's fees should be awarded pursuant to Minn.Stat. § 549.21 (1986). We agree. While we have held that testimony taken on an issue at a hearing on a writ of attachment is not necessarily dispositive of that issue upon trial on the merits, such testimony certainly puts a party on notice of the nature of the plaintiff's proof. If the only purpose of subsequent relitigation is to delay or harass, attorney's fees should be awarded. Here, Wiggin essentially insisted on a complete relitigation of identical issues without production of any additional evidence likely to change the original finding. This insis-

tence required some five days of court time and significant additional attorney's fees incurred by Walden. The attachment hearing was necessary to prevent Wiggin, through his corporation, from removing funds from the state to the detriment of Walden as creditor.

The statute provides reasonable attorney's fees will be awarded, together with costs, fees and disbursements, if the court finds any of the following:

1. The party or his attorney acted in bad faith; or
2. The party or his attorney asserted a claim knowing it to be frivolous; or
3. The party or his attorney asserted an unfounded position merely to delay the ordinary course of proceedings; or
4. The party or his attorney asserted an unfounded position simply to harass; or
5. The party or his attorney committed a fraud upon the court.

*Id.*, subd. 2.

Walden Bros. gave the required notice in its answer. Notice was given on motion with respect to the Wiggin defendants' insistence that their liability, as established earlier by Judge Menke, be retried before the trial court. On this issue we remand to the trial court to determine reasonable attorney's fees.

## DECISION

The trial court did not err in piercing the corporate veil of Richard Wiggin's corporations. The money judgment and interest thereon in favor of Walden Bros. is sustained by the evidence. The matter is remanded to the trial court to determine reasonable attorney's fees made necessary by Wiggin's insistence on relitigating an issue previously litigated in the same action.

Affirmed in part, reversed in part and remanded.