In the Matter of the Disciplinary Action Against the Dentist License of Joseph H. WANG.

No. C6–87–1337.

Supreme Court of Minnesota.

June 9, 1989.

Joe Thompson, Schmidt, Thompson, Thompson, Johnson & Moody, P.A., Willmar, for appellant.

Catherine Avina, Minneapolis, for respondent.

## OPINION

WAHL, Justice.

This case comes before the court on appeal by Dr. Joseph H. Wang from a decision of the court of appeals which affirmed an order of the Minnesota Board of Dentistry suspending his license to practice dentistry. *In re Wang*, 417 N.W.2d 268 (Minn.App.1987). The Board, adopting in all respects the findings and conclusions of the Administrative Law Judge (ALJ), determined that Dr. Wang engaged in conduct unbecoming a person licensed to practice dentistry in violation of Minn.Stat. § 150A.08, subd. 1(6) (1984)[1] and Minn. Rule 3100.6200(c) (1987)[2] and that he had improperly prescribed tetracycline for the treatment of acne in a former patient, in

1. Minn.Stat. § 150A.08 subd. 1(6) (1984) provides:

 **SUSPENSION, REVOCATION, LIMITATION, MODIFICATION OR DENIAL OF LICENSE.**
 Subdivision 1. **Grounds.** The board may refuse or by order suspend or revoke, limit or modify by imposing conditions it deems necessary, any license to practice dentistry or dental hygiene or the registration of any dental assistant upon any of the following grounds:

 \* \* \* \* \* \*

 (6) Conduct unbecoming a person licensed to practice dentistry or dental hygiene or registered as a dental assistant, or conduct contrary to the best interest of the public, as such conduct is defined by the rules of the board \* \* \*.

Because of the confusion over the application of the then current law, we specifically do not cite to the current volume of Minnesota Statutes.

2. Minn.Rule 3100.6200(c) provides:
 **CONDUCT UNBECOMING A LICENSEE OR REGISTRANT.**
 Conduct unbecoming a person licensed to practice dentistry or dental hygiene or registered as a dental assistant or conduct contrary to the best interests of the public, as used in Minnesota Statutes, section 150A.08, subdivision 1, clause (6), shall include the act of a dentist, dental hygienist, registered dental assistant, or applicant in:

 \* \* \* \* \* \*

 C. making suggestive, lewd, lascivious, or improper advances to a patient \* \* \*.

violation of Minn.Stat. § 150A.08, subd. 1(5) (1984).[3] The Board suspended Dr. Wang's license for one year but ordered that the suspension be stayed after 60 days on the condition, among others, that he pay, during the course of the stay, $35,000 to help defray the costs incurred in bringing the proceeding. The court of appeals affirmed the order of the Board except as to the amount of the costs assessed and remanded to give Dr. Wang an opportunity to be heard. We reverse and dismiss.

## I

A contested case hearing before Administrative Law Judge Peter C. Erickson (ALJ) in May of 1986 developed the facts concerning Dr. Wang and the charges brought by the Board.[4] Dr. Wang is an oral and maxillofacial surgeon with a Ph.D. in Pharmacology. He is the only oral and maxillofacial surgeon in Minnesota who also holds a Ph.D. in Pharmacology. In 1975, Dr. Wang completed a 3–year oral surgery residency at the University of Minnesota, then taught for a year in the oral and maxillofacial surgery department in the University of Minnesota School of Dentistry. At the time of the incidents which gave rise to these proceedings, Dr. Wang worked in his office in Willmar, Minnesota, where he has practiced oral surgery since 1976. He also worked one Saturday each month in the Edina office of Dr. Robert Johnson. The ALJ found Dr. Wang to be 47 years old, married with two children, well qualified to practice his profession and well-liked by his professional associates.

Based on the testimony of three female patients, D.C., C.J. and N.G., the ALJ found Dr. Wang engaged in suggestive conduct or conduct unbecoming a licensed professional with all three patients. Patient D.C. testified that on July 5, 1983, Dr. Wang embraced her after she stood up

from the dental chair, where he had just removed sutures and that he attempted to kiss her near the doorway leading to the waiting room, where receptionist Dawn Gauer is normally stationed. Vicki Constans, Dr. Wang's primary auxiliary in Willmar, was working in an open lab across the hall from where the incident with D.C. was found to have occurred. Constans testified that she watched D.C. get up and leave the room and that no improper conduct took place.

Patient C.J. testified that on October 20, 1983, Dr. Wang rubbed her breast as she recovered from anesthesia in the operatory and made suggestive comments. Auxiliary Constans testified that she was in the operatory at the time of the alleged incident and that no improper conduct occurred.

The third incident was found to have occurred on February 11, 1984, in the Edina office, where Dr. Wang worked one Saturday a month. The ALJ found patient N.G. visited the Edina office for the removal of wisdom teeth and was taken to a recovery room after the procedure as she was having a difficult time recovering from the anesthesia. N.G. testified that Dr. Wang rubbed his hand across her breast while he was rubbing her hands to aid recovery and that he asked suggestive questions. Judith Jeffrey, Dr. Wang's primary auxiliary in the Edina office, testified that she remained with N.G. at all times in the recovery room and that no misconduct occurred.

Seven current and past employees, including one he had discharged, testified to Dr. Wang's good character and conduct.

In addition to the eyewitness testimony of his auxiliaries that the touching had not occurred, Dr. Wang presented a substantial amount of expert testimony regarding the effects of the anesthetics he uses. The gist of this testimony is as follows: pa-

---

**3.** Minn.Stat. 150A.08, subd. 1(5) (1984) allows the board to take action against a medical license for:

> Improper or unauthorized prescription, dispensing, administering, or personal or other use of any legend drug as defined in chapter 151, of any chemical as defined in chapter

151, or of any controlled substance as defined in chapter 152 * * *.

**4.** A contested case hearing is required under Minn.Stat. § 150A.08, subd. 8 (1988) if discipline involves more than a 15–day suspension of a license.

tients, especially females, will not infrequently experience sexual dreams or hallucinations while under the influence of the types of anesthetics used by Dr. Wang as part of his practice; some patients may have trouble distinguishing reality from their own dreams or hallucinations while under the influence of these anesthetics; these risks are one of the reasons dentists and oral surgeons are taught to have an auxiliary present when using anesthetics which impair the cognitive functions. The Board's experts tended to question only the frequency that sexual dreams or hallucinations might occur. The ALJ found that the events in question were not dreams but did, in fact, occur.

With regard to the improper prescription charge, the Board alleged and the ALJ found Dr. Wang authorized an original prescription, and three refills, of tetracycline for David Jefferson, related to the treatment of acne. Dr. Wang admits authorizing the original prescription and denies authorizing refills. Specific findings on this charge are as follows:

On September 10, 1982, Dr. Wang extracted a wisdom tooth from David Jefferson, the son of a co-tenant in the building which houses Dr. Wang's office. At the time the extraction was performed, Dr. Wang noticed that David Jefferson had acne on his face.

Gordon Jefferson, David Jefferson's father, contacted Ray Pierskalla, a pharmacist in the same office building as Jefferson and Dr. Wang, to procure medication to treat his son's acne in early 1983. Mr. Jefferson stated that he was a medical doctor and told Mr. Pierskalla that he wanted to obtain accutane for his son. The pharmacist questioned use of this drug, because it was usually the drug of last resort for acne, and suggested that tetracycline be used instead. Jefferson agreed to this and Pierskalla filled a prescription of tetracycline for David Jefferson as ordered by Gordon Jefferson. Subsequently, Mr. Pierskalla became suspicious concerning Mr. Jefferson's credentials as a medical doctor. After a check with the County Medical Association, Pierskalla discovered that Mr. Jefferson was not a licensed M.D.

On Saturday, March 26, 1983, Mr. Jefferson telephoned Mr. Pierskalla from his office to order a refill of tetracycline for his son. At that time Pierskalla questioned Jefferson concerning his drug enforcement number to ascertain Jefferson's "authority" to prescribe medication. Jefferson stated that he did not have his DEA number available at that time. Dr. Wang then walked into Jefferson's office and was asked by Jefferson to authorize the prescription of tetracycline. Dr. Wang consented, talked to Pierskalla on the phone, and authorized the prescription for David Jefferson. Jefferson told Dr. Wang that because the family was leaving town on that day, it was imperative that the prescription be filled. Subsequently, Dr. Wang authorized refills of the prescription for tetracycline on April 23, July 9, and August 22, 1983.

Tetracycline is a legend drug as defined in Minn.Stat. ch. 151 (1984).

The scope of practice an oral maxillofacial surgeon such as Dr. Wang does not include the treatment of acne unless the surgeon is contemplating a procedure which involves an incision on the facial region. Treatment of acne may then be necessitated to eliminate the risk of infection to the area which is operated on.

The ALJ concluded that Dr. Wang violated Minn.Stat. § 150A.08, subd. 1(5) (1984) by prescribing tetracycline to David Jefferson and authorizing refills on that prescription through August of 1983. According to the findings, prescribing tetracycline for the treatment of acne was outside the scope of Dr. Wang's practice in David Jefferson's case.

The Board in its order adopted and incorporated as its own in all respects the findings and conclusions of the ALJ. The Board suspended Dr. Wang's license but stayed that suspension after 60 days on condition that, among others, Dr. Wang tender payment of $35,000 to help defray costs of the proceedings. The court of appeals affirmed the order of the Board

except as to the amount of the costs. We granted review.

## II

This appeal raises three issues: whether substantial evidence supports the Board's findings that appellant made suggestive or improper advances to three patients; whether substantial evidence supports the Board's findings that appellant improperly prescribed tetracycline and authorized refills of that prescription; and whether the Board assessed excessive costs.

The standard of proof required for administrative hearings is "a preponderance of the evidence, unless the substantive law provides a different * * * standard." Minn.Rules 1400.7300, subp. 5 (1987). Since no different standard of proof appears to be required by our statutory or case law in disciplinary proceedings involving persons with dentist licenses, and the parties here have not claimed otherwise, the preponderance standard applies in these cases as well.[5] *In re Schultz*, 375 N.W.2d 509, 514 (Minn.App.1985). Even so, these proceedings brought on behalf of the state, attacking a person's professional and personal reputation and character and seeking to impose disciplinary sanctions, are no ordinary proceedings. We trust that in all professional disciplinary matters, the finder of fact, bearing in mind the gravity of the decision to be made, will be persuaded only by evidence with heft. The reputation of a profession, and the reputation of a professional as well as the public's trust are at stake.

On judicial review, the evidence which proved the claim "more likely [* * *] is true than not true" by the preponderance standard[6] must be weighed by the "substantial evidence" standard. This court may reverse an agency decision, in a contested case, where such decisions are "[u]nsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 14.69(e) (1988). And we have done so. *See Kroll v. Independent School Dist. No. 593*, 304 N.W.2d 338, 342–43 (Minn.1981); *see also Department of Natural Resources v. Todd County Hearing Unit*, 356 N.W.2d 703, 710 (Minn.App.1984) rev. denied Feb. 6, 1985. The findings are to be affirmed only if, in the context of the record as a whole, they are supported by evidence that a reasonable mind might accept as adequate. *Minneapolis Police Dep't. v. Minneapolis Comm'n. on Civil Rights*, 425 N.W.2d 235, 239 (Minn.1988). In a disciplinary proceeding, if reasonable minds are to accept as adequate findings made under a preponderance standard, it is this court's view these findings must be reasonable in the context of the record as a whole, having in mind, as a reasonable person would, the seriousness of the matter under review.

## III

 The first issue is whether substantial evidence supports the Board's findings that Dr. Wang made suggestive or improper advances to three patients. Dr. Wang argues that the testimony of the Board's witnesses, on which the finding is based, does not constitute substantial evidence for four reasons. First, Dr. Wang followed professional practice designed to avoid precisely the charges made. Second, all eye witnesses, except the complainants, testi-

---

5. We note the burden of proof in attorney disciplinary cases is clear and convincing evidence. *In re Gillard*, 271 N.W.2d 785, 805 n. 3 (Minn. 1978). Attorney discipline proceedings, under the supervision and control of the judiciary, are sui generis. Attorney misconduct, striking as it does, at the administration of our justice system, gives society a heightened interest in the outcome of attorney discipline. A higher standard of proof is indicated. *See generally*, G.A. Beck, L.A. Bakken and T.R. Muck, *Minnesota Administrative Procedure*, 193–98 (1987). At oral argument a question was raised regarding whether the differing burdens might implicate the equal protection clause. *See In re Polk*, 90 N.J. 550, 449 A.2d 7 (1982) (differing burdens of proof in disciplinary proceedings of attorneys and doctors held not to violate the equal protection clause): *but see, Ettinger v. Bd. of Medical Quality Assurance*, 135 Cal.App.3d 853, 185 Cal. Rptr. 601 (1982). Since this issue was not raised below, we have no occasion to address it here for the first time. *See Lienhard v. State*, 431 N.W.2d 861, 866 (Minn.1988).

6. Minn.Dist. Judges Assn., *Jury Instruction Guides*, JIG 70 (3d ed. 1986).

fied the alleged conduct did not occur. Third, the complainant's testimony was impeached. And, fourth, the expert testimony regarding anesthetics suggests the complainants may have suffered transient hallucinations or dreams of a sexual nature.

The ALJ found that it was Dr. Wang's usual practice to have an auxiliary with him in the operatory at all times when a surgical procedure was being done. One or more of Dr. Wang's employees testified that they were present when the alleged instances of misconduct occurred and that misconduct did not occur.

Vicki Constans, Dr. Wang's primary auxiliary in Willmar, testified that the incidents with D.C. and N.G. did not occur. Constans said she was watching D.C. and was present in the room with N.G. at the time of the alleged incidents, and no improper conduct took place. Judith Jeffrey, Dr. Wang's primary auxiliary in the Edina office, said she remained in the recovery room the entire time with C.J. and no improper conduct occurred. The ALJ did not disbelieve this testimony. Rather he explained it away: Vicki Constans was busy with the equipment trays and may not have been looking when D.C. was hugged; Dawn Gauer could have been away from her desk when the "kissing" occurred; Vicki Constans probably assumed she was in the room with C.J. for the entire time because that was her usual practice; Judith Jeffrey's testimony that she was with N.G. in the recovery room the entire time did not jibe with her grand jury testimony that she would "come in from time to time." We cannot so easily dismiss the testimony of the auxiliaries. These were witnesses other than the immediate actors who had reason to be where they were and who strongly denied improprieties occurred.

The Board argues that Dr. Wang's auxiliaries are not to be believed because they are his loyal employees. Yet the ALJ did not suggest that these employees testified out of misplaced loyalty and nothing in the record suggests that all four women would condone a pattern of sexual improprieties by their employer.

Despite the contrary testimony of Dr. Wang and his employees, the ALJ believed the testimony of the three complaining witnesses. He noted that the three allegations of improper conduct occurred within a seven-month period of time; that the three complaining witnesses were all young women in their early 20s, each completely unaware of what had allegedly happened to the other two; and that each of the incidents showed the same kind of conduct by Dr. Wang: inappropriate verbilization in conjunction with touching. The ALJ noted further that each of the three women appeared to be telling the truth in the matter despite the passage of several years since the occurrence, that each had given statements to the police, to respondents's investigator and to the Board of Dentistry. In his words, these three witnesses had "no reason to lie about what happened." A careful reading of the record does not suggest these patients had reason to lie but it does contain disquieting evidence that they may have had reason to misconstrue Dr. Wang's attempts to put their apprehensions at ease with his less-than-perfect English and his less-than-perfect understanding of American culture and mores. Dr. Wang is Chinese, raised and educated in China. His clumsy efforts to get his patients to relax and laugh—by asking about "happy hour" and boy friends—could be misinterpreted as inappropriately suggestive. In addition, the ordinary touchings when removing a bib, the leaning or reaching over a patient, the necessary patting or rubbing of a patient's hand or arm, along with the after-effects of anesthetic, could also have been misunderstood.

Though the weight of testimony is for the agency to decide, *Gibson v. Civil Serv. Bd.*, 285 Minn. 123, 126, 171 N.W.2d 712, 715 (1969), we have overturned agency decisions based on witness testimony where the testimony did not constitute substantial evidence given the record as a whole. On the whole record before us in this case and in light of the seriousness of the charges, we hold that the findings of the Board of Dentistry that appellant made suggestive or improper advances to three patients in violation of Minn.Stat. § 150A.08, subd.

1(6) (1984) and Minn.Rule 3100.6200(c) (1987) are not supported by substantial evidence.

## IV

■ The Board found that Dr. Wang violated Minn.Stat. § 150A.08, subd. 1(5) (1984) by prescribing tetracycline to David Jefferson and authorizing refills on that prescription through August of 1983 for treatment outside the scope of his license. Dr. Wang admits authorizing the original tetracycline prescription to treat David Jefferson's acne, on March 26, 1983, but argues that such conduct was not prohibited by statute at that time. Minn.Stat. § 14.69(d) (1988) permits this court to reverse an agency decision if affected by an error of law.

Dr. Wang correctly notes the statute which the ALJ and the Board found was violated by Dr. Wang's original prescription, Minn.Stat. § 150A.08, subd. 1(5) (1984), did not exist at the time the original prescription was authorized. Minn.Stat. § 150A.08, subd. 1(5) (1984), which made the unauthorized or improper prescription of any legend drug, defined in chapter 151, grounds for license revocation, did not become effective until April 30, 1983, a month after the original prescription.[7] *See* An Act of April 29, 1983, ch. 70 § 5 1983 Minn.Laws 205, 212. Thus, Dr. Wang's original prescription could not have violated the law as found by the ALJ.

The ALJ and the Board apparently intended to find Dr. Wang's original prescription violated Minn.Stat. 150A.08, subd. 1(5) (1982). The identical language now appears at Minn.Stat. § 150A.08, subd. 1(6) (1988). Thus, the pertinent question is, had the findings cited to the correct statute, would the original prescription have constituted conduct unbecoming a person licensed to practice dentistry or conduct contrary to the best interest of the public as provided in Minn.Stat. § 150A.08 subd. 1(5) (1982)? Rules promulgated by the Board define conduct unbecoming of a dental licensee as follows:

"Conduct unbecoming a person licensed to practice dentistry or dental hygiene or registered as a dental assistant or conduct contrary to the best interests of the public," as used in Minnesota Statutes, section 150A.08, subdivision 1, clause (5) of the act, shall include the indiscriminate and repeated prescribing or dispensing of any drug which under the circumstances has no therapeutic value;

Minn.Rule 3100.6200 (1983). An examination of the record reveals the only evidence introduced bearing on the therapeutic value of tetracycline as a treatment for acne suggests that the drug has a therapeutic effect, which Dr. Wang, a Ph.D. pharmacologist would have known. While the ALJ did not address the criteria set out in Minn. Rule 3100.6200 (1983), we conclude after careful consideration of all the evidence, that Dr. Wang did not violate the rule or the law in authorizing the original prescription.

The Board focuses on whether Dr. Wang's authorizing the prescription was outside the scope of the practice of oral surgery. The ALJ, relying on expert testimony, concluded it was. Neither the Minnesota Statutes nor the Rules, however, mention the scope of practice as a factor and we do not presume it to be our prerogative to read a scope of practice factor into this law.

■ With regard to the prescription refills, appellant argues the evidence presented that he authorized three refills of the original tetracycline prescription is too meager to constitute substantial evidence. We agree.

The Board adduced two pieces of evidence linking Dr. Wang to the refills. First, the Board introduced a copy of the pharmacist's prescription records, logging the refills. The prescription record bears a notation reading "OK Wang" following the date of each refill. Second, Investigator Kostohyrz related a conversation between himself and Dr. Wang. When asked if Dr. Wang admitted he had authorized the refills, Kostohryz first said he could not re-

---

7. The first refill was filled a week before the effective date of the statute as well.

call. Then, after refreshing his memory by looking at his report, Kostohyrz said Dr. Wang authorized the refills.

Ray Pierskalla, the pharmacist who filled the original prescription, would not say that the notation "OK Wang" meant Dr. Wang authorized the refills. Pierskalla said he didn't know if Dr. Wang authorized the refills and that the notation and refills might have been made based on Mr. Jefferson's personal assurance that Dr. Wang did so authorize. Portions of a letter written by Pierskalla were read into the record saying the refills had been made on Mr. Jefferson's personal assurance. Mr. Pierskalla said that such refill procedures were not uncommon. Thus, the evidence linking Dr. Wang to the refills is speculative at best. Investigator Kostohyrz's recounting of Dr. Wang's out-of-court admission of authorizing the refills, denied by Dr. Wang, is the only affirmative evidence supporting the Board's conclusion that Dr. Wang authorized the refills.

This court has on several occasions expressed concern over the probative quality of evidence on which agency decisions are based. In *Morey v. School Bd. of Independent School Dist No. 492*, 271 Minn. 445, 448–49, 136 N.W.2d 105, 107–08 (1965), we acknowledged that lower standards of admissibility of evidence are used for administrative hearings. *Morey* at 448–49, 136 N.W.2d at 107–08.[8] Nevertheless, we said "when a teacher's job is at stake, a just concern for fair play would require that the evidence which is calculated to support the charges should be relevant and have probative value. The board should not have to find support for its determination in hearsay * * *." *Id.* at 449, 136 N.W.2d at 108.[9] We are not prepared to say that hearsay evidence standing alone may never support

a disciplinary action against a licensed professional. Nevertheless, we find the evidence here to be too insubstantial to justify the ALJ's finding that Dr. Wang authorized three refill prescriptions of tetracycline. Reversing the decision of the court of appeals and the order of the Board of Dentistry, we hold that appellant did not violate Minn.Stat. § 150A.08, subd. 1(5) (1984) by prescribing tetracycline for treatment of acne of a former patient nor does substantial evidence support the finding that he authorized three refills of that prescription.

V

■ Lastly, appellant argues the Board assessed excessive costs. Because we reverse the decision of the Board, Dr. Wang will pay no costs. We address the issue, however, for guidance in future cases. The Board ordered that Dr. Wang's license be suspended for one year but that the suspension be stayed after 60 days on the condition, among others, that Dr. Wang pay $35,000 to help defray the costs incurred in bringing the proceedings which resulted in the suspension. Dr. Wang objected to the assessment and requested that the Board reconsider the amount and either award no amount at all or such sum as would be reasonable under the circumstances. The Complaint Committee of the Board, through a letter from its counsel to the Board's staff counsel, urged the Board not to reconsider the assessment of $35,-000, unless in exchange for the Board's lowering the assessment, Dr. Wang agreed not to appeal the Board's decision. Undeterred by this suggested "negotiation," Dr. Wang appeals the assessment of the salaries and expenses of the Attorney General's office, the ALJ, the court reporter, and

8. Minn.Stat. § 125.12, subd. 9 (1988), provides that dismissal of a teacher shall be based on substantial and competent evidence. Similar words are not present in the dental board statutes. No such words appeared, however, in the 1965 version of the teacher discharge statutes. Indeed, Minn.Stat. § 125.17, subd. 5 (1964) provided that all evidence could be heard. Moreover, the *Morey* decision seems to be based on fair play not the underlying statutes, and thus its rationale would apply to the instant case.

9. Technically, the out-of-court statements by Dr. Wang are admissible as admissions by a party opponent. Minn.R.Evid. 801(d)(2). At common law, however, admissions by a party were considered hearsay and thus would appear to fall within the cautionary words of *Morey*. See 4 Wigmore, *Evidence* § 1048 (Chadbourn rev. 1972).

the per diem allowance of the Board members.

The Board contends that while the legislature has not specified the exact amount of costs which can be recovered when the Board prevails in a disciplinary proceeding, it has provided in Minn.Stat. § 150A.08, subd. 3 (1988) that the Board may recover "all costs" of such proceeding. Subdivision 3 reads in pertinent part "[t]he board may require the licensee or registrant to pay all costs of the proceedings resulting in the suspension or revocation of license or registration * * *." This language, in the Board's view, authorizes the assessment of costs in this case. We have not, in the past, construed "all costs" to have such a broad sweep.

In *McRostie v. City of Owatonna*, 152 Minn. 63, 68, 188 N.W. 52, 54 (1922), we held that a city charter provision which authorized a party to recover "all costs and disbursements" did not include attorney fees and nontaxable expenses. "The word 'costs' as used in this connection has a fixed and definite meaning, viz costs authorized by statutes." *Id.* We have also used the word "costs" to mean disbursements when no statutory costs were involved. *Tank v. Clark*, 179 Minn. 587, 588, 229 N.W. 579, 580 (1930). We have, however, consistently reaffirmed the position that costs are not recoverable unless "there is a specific contract permitting or a statute authorizing such recovery." *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 53 (Minn.1983). "The general rule, * * * is that attorney fees will not be granted absent *specific statutory* or contractual authorization therefor." *Busse v. Board of County Comm'rs*, 308 Minn. 184, 190, 241 N.W.2d 794, 798 (1976) (emphasis added). Minn.Stat. 150A.08 subd. 3 contains no specific statutory language authorizing the kinds of costs assessed here, including the attorney fees and investigation costs incurred by the attorney general.

The Board argues that under the Examining and Licensing Boards Act, the Board is required to pay the "reasonable costs" of the services provided by the Attorney General, *see* Minn.Stat. § 214.04, subd. 2 (1988),

making those charges costs of the proceedings authorized by statute as required by our cases. The court of appeals adopted this argument in holding that Dr. Wang could be assessed the costs at issue. *Wang*, 417 N.W.2d at 274.

Our legislature has enacted many laws specifically and explicitly providing for the recovery of attorney fees. *See* Note, *Statutory Attorney Fees Provisions*, 4 Hamline L.Rev. 609, 612–74 (a compilation of Minnesota Statutes authorizing attorney fees). Statutes enacted subsequent to the Examining and Licensing Boards Act have, in other contexts, specifically authorized the attorney general to "recover costs and disbursements, including costs of investigation and reasonable attorney's fees." *See, e.g.*, Minn.Stat. § 325F.24, subd. 3 (1988) (allowing attorney general to recover "reasonable attorney fees" for prosecution of violations of statutes regulating insulation; Minn.Stat. § 501.81, subd. 3 (1986) (allowing attorney general to recover attorneys' fees in its supervision of charitable trusts). Plainly, the legislature knows how to specifically authorize the recovery of attorney fees and investigation costs when it intends such recovery. No such clear authorization appears in the instant statute.

There are also sound policy reasons for not extending the statutory award of costs contained in Minn.Stat. § 150A.08, subd. 3, to attorney fees and investigation costs incurred by the attorney general in contested case professional disciplinary proceedings. To impose large costs and expenses both chills the accused from defending against the charges and provides an incentive for the Board to find against licensees in order to pass along the Board's expenses. Such a result raises due process concerns. We agree with appellant that "[t]he practice soon becomes a penalty or forfeiture rather than a good faith attempt to recover traditionally allowable reasonable expenses of litigation." We hold that Minn.Stat. § 150A.08, subd. 3 does not authorize the Board to assess against licensees the attorney fees and investigation costs incurred by the attorney general in a disciplinary proceeding.

We turn to the remaining costs appealed by Dr. Wang. Minnesota Statutes §§ 3.761–3.765 (1988) control what fees, if any, Dr. Wang may recover from the Board. Minn.Stat. § 14.62 subd. 3 (1988). While Minn.Stat. § 150A.08 subd. 3 controls what fees the Board may recover if it prevails, we believe that Minn.Stat. § 3.761, subd. 4, which defines expenses as "the costs incurred by the party in the litigation," evinces a legislative intent as to what items ought to be recoverable as costs in the context of a contested case hearing. The items enumerated are (1) filing fees; (2) subpoena fees and mileage; (3) transcript costs and court reporter fees; (4) expert witness fees; (5) photocopying and printing costs; (6) postage and delivery costs; and (7) service of process fees. In future cases the assessment of costs by the Board of Dentistry in a disciplinary matter must be in conformity with those costs enumerated in Minn.Stat. § 3.761, subd. 4.

We reverse the decision of the court of appeals and the order of the Board of Dentistry and dismiss the proceedings.

Reversed and dismissed.

KEITH, J., took no part in the consideration or decision of this case.