In the Matter of the Insurance Agent
License of THOMAS CASEY,
SR., P.A.

No. C8–95–283.

Court of Appeals of Minnesota.

Nov. 28, 1995.

Review Granted Feb. 9, 1996.

Thomas E. Harms, Hessian, McKasey & Soderberg, Minneapolis, for Relator.

Hubert H. Humphrey, III, Attorney General, Maya K. Howlett and Susan E. Damon, Assistant Attorneys General, St. Paul, for Respondent.

Considered and decided by NORTON, P.J., and RANDALL and DAVIES, JJ.

## OPINION

NORTON, Judge.

Relator, an insurance agent, appeals by certiorari from the decision of the Commissioner of Commerce sanctioning him for violating Minn.R. 2795.0400 (1991), a rule requiring delivery of an insurance policy, certificate, or other evidence of insurance to an insured within 30 days of its receipt by the agent. We reverse.

## FACTS

Relator Thomas Casey, Sr., holds an insurance agent license issued by the Commissioner of Commerce. Under authority of that license, Casey operates the incorporated business of Casey and Casey Insurance Agency. This case concerns Casey's provision of insurance for Attracta Sign, Inc.

Attracta Sign is an incorporated business owned by Albin Sterner. Sterner is president of the corporation and his wife, Louise Sterner, is an officer of the corporation. Attracta Sign employs approximately 25 people and manufactures and erects business signs.

Attracta Sign had insurance with another agency with an annual renewal date of December 8. Albin Sterner called Casey shortly before November 25, 1991, and asked him if he could give Attracta Sign a quote on a complete package of business insurance, including business auto, commercial, inland marine, excess liability, and workers' compensation. Casey and his wife then met with the Sterners at a restaurant to discuss the insurance coverage. Albin Sterner indicated

that the insurance premium had to be in the $40,000 range. Attracta Sign had already received insurance quotes from W.A. Lang Co. and Corporate 4.

On November 25, 1991, a clerk at the Casey agency transmitted an application to Ohio Casualty for insurance to fill Attracta Sign's needs. The Minneapolis branch manager for Ohio Casualty, Dean Warnock, initially declined to offer the coverage, but he changed his mind in early December after he discovered that Ohio Casualty had given a quote to the Corporate 4 agency on workers' compensation for Attracta Sign. He informed Casey that he could bind coverage for Attracta Sign with Ohio Casualty. No premium figure was discussed at this time, because the information necessary to obtain a quote was not yet assembled. Attracta Sign delivered a check in the amount of $5,000 to the Casey agency on December 12, 1991, to bind the coverage.

On January 22, 1992, Casey received documents from Ohio Casualty concerning the Attracta Sign coverage, but there is a dispute regarding what document(s) Ohio Casualty sent to the Casey agency. It is undisputed, however, that the documents included an insured coverage summary marked "insured's copy," which listed a total advance annual premium of $51,895.

Upon reviewing the premium estimate, Casey telephoned Warnock to determine how the premium could be lowered. Warnock told Casey that Ohio Casualty was willing to review the price and consider making changes to lower it. Casey then called Albin Sterner and informed him that the premium had "come in high" and that he would be working to reduce it. Sterner agreed that Casey should continue trying to obtain a more favorable premium. Casey did not inform Sterner of the exact premium estimate he had received from Ohio Casualty. But the record shows that Louise Sterner had learned from another agent that Ohio Casualty had written the policy with a $52,000 premium.

Casey introduced evidence of his transmission of several certificates of insurance to Attracta Sign and its customers after binding coverage with Ohio Casualty. But the documents Casey received from Ohio Casualty on January 22 were not delivered to Attracta Sign until April 13, three days after Warnock faxed a memorandum to Casey, indicating the final changes Ohio Casualty was willing to make in the pricing of coverage for Attracta Sign. Warnock offered to change the workers' compensation from Ohio Casualty and reissue it through the West American Insurance Company Dividend Plan. The premium package worked out by Casey and Warnock resulted in an initial premium cost of $47,657, but with an additional reduction of up to $9,917 if Attracta Sign met the conditions under the West American dividend plan.

On April 13, 1992, Casey met with Albin and Louise Sterner. The Sterners brought a check for $10,000 as an additional payment toward premiums owed through that date. Casey explained the proposal that Ohio Casualty had made. He delivered to the Sterners the insured's copies of documents identified as Exhibit 6.

Louise Sterner testified that they were shocked at the premium, because it was far in excess of what they had expected. The Sterners then secured coverage elsewhere and cancelled the Ohio Casualty policy. Due to the cancellation of the policy, Ohio Casualty assessed additional costs for the less-than-full-term insurance. Casey and Ohio Casualty sued Attracta Sign to recover the additional amounts. The Sterners placed a complaint against Casey with the Department of Commerce. The lawsuit against the Sterners was eventually settled.

The subject of this certiorari appeal is the Department of Commerce's disciplinary action against Casey. That action initially asserted: misrepresentation; untrustworthiness; conduct exhibiting deceptive or dishonest practices; submission of an application for insurance with an effective date for workers' compensation coverage creating a lapse in coverage; and failure to deliver a policy of insurance, certificate, or other evidence of insurance to the insured within 30 working days of its receipt.

After a two-day hearing, an administrative law judge (ALJ) found that the Department

had not proven any of the claims by a preponderance of the evidence and recommended dismissal of the entire disciplinary action. The Commissioner of Commerce reviewed the ALJ's recommendation and the submissions of the parties and determined that Casey had violated the rule requiring delivery of a policy or other evidence of insurance to the insured within 30 days. On that single count, the Commissioner imposed a $500 civil sanction against Casey. The Commissioner adopted the ALJ's finding that the Department had failed to prove its other claims. This certiorari appeal followed.

## ISSUE

Is the Commissioner's decision that relator violated Minn.R. 2795.0400 (1991) by failing to deliver a policy or other evidence of insurance to the insured within 30 working days of its receipt supported by substantial evidence, and is the $500 civil sanction consistent with the law and not an abuse of discretion?

## ANALYSIS

■ The general standard of proof for an administrative hearing, such as the disciplinary proceeding here, is "a preponderance of the evidence, unless the substantive law provides a different burden or standard." Minn.R. 1400.7300, subpt. 5 (1991); *In re Schultz*, 375 N.W.2d 509, 514 (Minn.App. 1985). Because the substantive law here requires no different standard of proof, the preponderance standard applies. *In re Wang*, 441 N.W.2d 488, 492 (Minn.1989).

■ On review of an agency decision, this court must uphold the factual findings of the agency if they are supported by substantial evidence. *Urban Council on Mobility v. Minnesota Dept. of Natural Resources*, 289 N.W.2d 729, 733 (Minn.1980). This court may reverse or modify the decision of an agency if the decision is "unsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 14.69 (1994).

■ The supreme court has explained that the evidence in disciplinary cases must have some "heft." *Wang*, 441 N.W.2d at 492.

In a disciplinary proceeding, if reasonable minds are to accept as adequate findings made under a preponderance standard, * * * these findings must be reasonable in the context of the record as a whole, having in mind, as a reasonable person would, the seriousness of the matter under review.

*Id.* The supreme court has also recognized that "assessment of penalties and sanctions by an administrative agency is not a factual finding but the exercise of a discretionary grant of power," which the court will set aside on appeal if the sanction amounts to an abuse of that discretion. *In re Haugen*, 278 N.W.2d 75, 80 n. 10, 81 (Minn.1979).

■ The Commissioner determined that Casey failed to deliver a policy or "other evidence of insurance" according to requirements of Minn.R. 2795.0400 (1991):

Policies, certificates, or other evidence of insurance which are received by an agent from an insurer for delivery to an insured must be delivered or mailed to the insured by the agent within 30 working days of the agent's receipt, unless the insured agrees in writing that the agent may retain them.

Casey first contends the record does not support the Commissioner's finding that he received an insurance "policy" for Attracta Sign on January 22, 1992. We agree. Although the record does contain substantial evidence supporting the Commissioner's finding that Casey received Exhibit 6 from Ohio Casualty in January, the law does not support the conclusion that documents in Exhibit 6 so clearly constituted the insurance policy for Attracta Sign as to justify the sanction imposed. A "policy" of insurance must contain the entire insurance contract, including a "statement in full of the conditions of insurance." Minn.Stat. § 60A.08, subd. 1 (1990). Exhibit 6 contains only the insured coverage summary and the declarations sheets with schedules and premiums. It does not contain general terms of insurance, including exclusions, definitions, and coverage. Exhibit 6 is not a policy; the record does not support the finding that Casey received and failed to timely deliver a policy.

Casey next challenges the Commissioner's finding that he failed to deliver "evidence of insurance" within the 30–day time period. He first argues that this issue was not properly before the Commissioner. He contends that he did not receive adequate notice of this claim. We disagree.

■ The department's notice and order for a hearing alleges that Casey "failed to deliver the policy, certificate or other evidence of insurance to the insured within 30 working days of its receipt, in violation of Minn.R. 2795.0400 (1991)." This constituted sufficient notice to Casey of a claim against him for failing to deliver "other evidence of insurance." *Cf. Schmidt v. Independent Sch. Dist. No. 1*, 349 N.W.2d 563, 567 (Minn.App. 1984) (determining that grounds for teacher's termination enunciated by the statute were placed at issue by a notice of termination even though the specific grounds were not expressed separately).

■ Further, the record demonstrates that Casey consented to try this issue. *Cf. Roberge v. Cambridge Coop. Creamery Co.*, 243 Minn. 230, 234, 67 N.W.2d 400, 403 (1954) (court commonly implies consent where party has failed to object to admission of evidence outside the issues raised in pleadings or where party has presented his own evidence relating to those issues); Minn.R.Civ.P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings"). As respondent notes, the record contains numerous occasions where testimony was submitted relating to certificates and to other evidence of insurance. Most revealing are the questions regarding Casey's failure to deliver the insurance coverage summary, a document that was never characterized as a policy, but which the Commissioner found was "evidence of insurance." Casey did not object that this line of questioning was beyond the scope of the claims against him. His failure to do so further demonstrates his knowledge that the issue of failure to deliver

"other evidence of insurance" was before the Commissioner.

We now turn to the merits of the issue of whether Casey timely delivered "evidence of insurance." Casey contends that the Minn.R. 2795.0400 does not require an agent to deliver within 30 days documents received from the insurance company that have not been finalized and that are subject to ongoing negotiations concerning a fundamental element of the insurance contract. Casey supplied expert testimony from another agent who stated that the documents in Exhibit 6 only constituted a proposal, because the parties had not yet agreed to an essential element of the contract (the premium).[1] Casey's expert explained that it was the practice of insurance agents to withhold the insured's copies until a final agreement. But, in addition, he stated that it also was a usual practice to send the documents back to the insurance company to be corrected. Here Casey withheld the documents from the Sterners but did not return the documents to Ohio Casualty.

■ The Commissioner explained his rationale for his application of Minn.R. 2795.0400:

The clear purpose of Minn.R. 2795.0400 is to prevent an insured from being unaware of premium prices or other policy terms. The facts of this case amply demonstrate why this rule is necessary. * * * [Casey's] failure to deliver the documents caused considerable confusion about the premium amounts. The evidence shows that the Sterners did not know until April that the price and other terms of the Ohio Casualty policy were not even close to what they had expected. As a consequence of [Casey's] failure promptly to deliver the insured coverage summary and other documents which would have clarified the matter, the Sterners were deprived of the opportunity to cancel the policy or take other corrective action at a much earlier date. The Sterners faced liability for several months of premiums

---

1. On the record here, there may be no dispute that price was an essential element of the proposed insurance contract, as evidenced by the Sterners' stated requirement of premiums in the $40,000 range, their repeated inquiries concerning price, and their ultimate cancellation when Casey failed to obtain a guaranteed price low enough to satisfy them.

under a far more expensive policy than they had expected and suffered economic and other harm in defending against a premium collection action that ensued.

The Commissioner considered it "irrelevant" whether the documents Casey received were the "final" policy, or evidence of a final insurance contract. The Commissioner reasoned that interpreting Minn.R. 2795.0400 to require delivery only when a policy is "final" would essentially render the rule meaningless, because a policy is subject to periodic amendment by endorsement throughout its life. The Commissioner concluded that, under that interpretation, an agent could arguably never deliver the policy, because it would never be "final."

■ This court gives considerable deference to an agency's interpretation of its own rule, "especially when the relevant language is unclear or susceptible to different interpretations." *St. Otto's Home v. Minnesota Dept. of Human Servs.*, 437 N.W.2d 35, 40 (Minn.1989). While the Commissioner's interpretation appears to be overly narrow and rigid, we nevertheless defer to the Commissioner's interpretation of this rule as it pertains to the facts here.

■ But although we observe that the record contains evidence to support the finding that Casey technically violated this rule by retaining documents marked "insured's copies" and by not timely delivering them to Attracta Sign, we must, on this record, disagree with the sanction imposed by the Commissioner. Contrary to the Commissioner's concerns regarding the possible non-finality of a policy that is subject to periodic amendments, the non-finality here concerned pricing, an essential element of the insurance contract.

In January, when Ohio Casualty first gave its quote for the proposed coverage, including a summary of individual premiums, the premium total of $51,895 was clearly unacceptable to the Sterners, who had stated that they wanted a premium in the $40,000 range. Casey reasonably believed, therefore, that the documents were not ready for transmission to the insured, because a basic element of the insurance contract did not meet the customer's need and demand. For these reasons, he erroneously believed that the 30-day delivery requirement of Minn.R. 2795.0400 did not apply to the documents he retained in his possession.

The record does not support the Commissioner's finding that "the Sterners did not know until April that the price and other terms of the Ohio Casualty policy were not even close to what they had expected." First, there is no record that "other terms" existed that did not meet the Sterners' expectations. The record shows that the Sterners only had an issue with quoted premiums. Second, the record shows that, contrary to the Commissioner's finding, the Sterners had reason to know that the January premium quote was "not even close" to their demand. Louise Sterner talked to an agent from Corporate 4 in January, who informed her that he had called Ohio Casualty and had learned that the policy premium provided to Casey was "$52,000." She testified that she talked to Casey and he said not to worry, that "everything is being taken care of."

The record and the remaining findings of the Commissioner do not show that Casey was stringing the Sterners along, failing to respond to their concerns about price. The record shows he immediately started working on this issue to benefit his clients. He made, as best as can be determined from the record, an honest effort and achieved some success, even if it was at his own expense when he reduced his commissions. The Sterners knew of, and approved of, Casey's attempts to lower the price. Casey was able to reduce the premium to $47,000, with the opportunity for further reductions of $9,917 under the dividend plan. When the Sterners met with Casey, he explained the new premium and the dividend plan, and the Sterners gave him a check for $10,000. But soon afterward, the Sterners chose to cancel the policy, even though Casey cautioned them about the additional costs they would incur in cancelling the Ohio Casualty policy. The Sterners ultimately obtained new coverage, at limits and deductibles unknown to us, at "slightly over $40,000," according to Louise Sterner. This record does not support the

Commissioner's finding that Casey's actions caused considerable cost to the Sterners. This record lacks the "heft" required in disciplinary cases. *See Wang*, 441 N.W.2d at 492 (requiring evidence in disciplinary cases to have "heft").

■ Although Casey's failure to deliver the documents within 30 days of receipt may be a technical violation of Minn.R. 2795.0400, the record does not establish that he was the proper object of censure based upon this single violation. We take judicial notice of the impact censure can have on an agent's business,[2] making the penalty reach far beyond the $500 imposed by the Commissioner. Imposition of this sanction, on the basis of this record, was a clear abuse of discretion. *See Haugen*, 278 N.W.2d at 80–81. (holding that where real estate agent acted in good faith, license revocation was "drastic sanction" amounting to an abuse of discretion).

## DECISION

On the whole record before us, and having in mind the seriousness of the disciplinary matter under review and the multiple errors in the Commissioner's findings, we hold that the Commissioner's sanction of Casey for failure to deliver evidence of insurance, in violation of Minn.R. 2795.0400, far outweighs the severity of the technical violation here and amounts to an abuse of discretion.

**Reversed.**

2. This issue was discussed at oral argument without objection or controversy. Censure impacts the agent's ability to maintain business relationships with insurance companies.