Alex **ZALUCKYJ**, et al., Appellants,

v.

**RICE CREEK WATERSHED DISTRICT**, Respondent,

**STATE of Minnesota, Department of Natural Resources, et al.,** Respondents,

**Minnesota Center for Environmental Advocacy, Respondent.**

No. C2–01–1083.

Court of Appeals of Minnesota.

Feb. 12, 2002.

Review Denied April 16, 2002.

Paul R. Haik, Krebsbach Haik, Ltd., Minneapolis, for appellants.

Thomas M. Scott, Campbell Knutson, P.A., Eagan, for respondent Rice Creek Watershed District.

Mike Hatch, Attorney General, Matthew B. Seltzer, Peter L. Tester, Assistant Attorneys General, St. Paul, for respondents Department of Natural Resources, et al.

Janette Brimmer, St. Paul, MN, for Minnesota Center for Environmental Advocacy.

Considered and decided by
TOUSSAINT, Chief Judge,
HALBROOKS, Judge, and FOLEY,
Judge.

## OPINION

FOLEY, Judge.*

Appellant landowners, who contended that their land was being flooded due to overflow from a public ditch, filed a declaratory judgment complaint and a petition for writ of mandamus in district court. They sought an order requiring, in relevant part, that the watershed district remove obstructions and repair and maintain the ditch. In the alternative, they sought a writ of mandamus ordering the watershed district to commence inverse condemnation proceedings. After a court trial, the district court ruled that appellants failed to exhaust their administrative remedies, dismissed their complaint and petition for mandamus, and denied their motion for amended findings or a new trial. The landowners contend that they were entitled to a jury trial on the exhaustion issue, that a petition for repair under Minn.Stat. 103E.715 (2000) was not an available remedy, that in any event it would be futile to petition for repair, and that they were entitled to declaratory and mandamus relief as to the applicability of certain rules and regulations regardless of the outcome of the exhaustion issue. We affirm.

## FACTS

Washington County Judicial Ditch No. 2 is a 13–mile public drainage system established by district court order dated April 12, 1909. At that time, the cost of constructing the ditch was $24,618.04 and the benefit to the landowners was $34,053. The benefits have not been redetermined since the original establishment of the ditch.

Land ownership along the ditch is comprised of a mixture of private and public holdings, including public wetlands and waters. Appellants are individuals who own land on or near the ditch. The City of Hugo [1] also owns land nearby. Respondent Rice Creek Watershed District is the drainage authority. Respondents Department of Natural Resources (DNR) and the Board of Water and Soil Resources are state agencies that administer public water and wetland protection programs. Respondent Minnesota Center for Environmental Advocacy, a nonprofit environmental group, intervened.

Appellants contend that water overflowing from the ditch flooded their land. Seeking to remedy the problem, in 1995, the city applied to the watershed district for a permit to make a profile adjustment of the ditch, to be achieved by lowering three culverts. After an initial denial, a joint study, and other proceedings, the watershed district issued a permit in 1998 allowing one of the culverts to be lowered. The city then lowered the culvert.

In November 1998, the city petitioned the watershed district for an obstruction hearing pursuant to Minn.Stat. 103E.075

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The City of Hugo was a plaintiff in the district court proceedings but has not filed a notice of appeal.

(1998). It sought a determination that the other two culverts were obstructing the flow of the ditch and should be lowered. In April 1999, the watershed district denied the cities petition for a hearing, determining that merely lowering the culverts without making other ditch repairs would not improve the hydraulic capacity of the ditch. It determined that the culverts were part of an out-of-repair drainage system. The watershed district noted that under Minn.Stat. 103E.715 (1998), any interested party may petition the watershed district to repair the ditch, and that the proceeding could include an order requiring local road authorities to lower the culverts at their expense.

The city did not petition for repair or seek district court review of the decision on the petition. Instead, the city and appellant landowners filed a declaratory judgment complaint and a petition for a writ of mandamus in district court, seeking an order for removal of the obstructions and repair of the ditch, or, in the alternative, for inverse condemnation proceedings, as well as a determination that they were exempt from certain rules and regulations.

Before reaching the merits, the court held a trial on the preliminary issue of whether the city and landowners should have first petitioned the watershed district for repair of the ditch pursuant to section 103E.715. The court determined that appellants failed to exhaust their administrative remedies and failed to show that exhaustion would have been futile. It dismissed their complaint and petition for writ of mandamus and denied their motion for amended findings or a new trial. This appeal followed.

## ISSUES

I. Were appellants entitled to a jury trial on the issue of exhaustion of administrative remedies?

II. Did appellants fail to exhaust their administrative remedies or show that exhaustion would be futile?

## ANALYSIS

The district courts findings of fact will not be set aside unless clearly erroneous. Minn. R. Civ. P. 52.01. Questions of law will be reviewed de novo. *In re Improvement of Murray County Ditch No. 34*, 615 N.W.2d 40, 45 (Minn.2000).

### I.

■ We must first determine whether appellants were entitled to a jury trial on the issue of exhaustion of administrative remedies. The district court ultimately ruled that the issue was for the court, not the jury, to decide.

Appellants argue that in mandamus proceedings and declaratory judgment actions, parties are entitled to have fact issues tried by a jury as in a civil action. Minn.Stat. 586.12 (mandamus), 555.09 (declaratory judgment) (2000). Because in this case the issue of exhaustion of administrative remedies involves disputed fact questions, they contend that they were entitled to a jury trial. *See Alevizos v. Metro. Airports Commn*, 317 N.W.2d 352, 359–60 (Minn.1982) (holding that in mandamus proceeding, jury resolves disputed factual questions on whether a taking occurred, while court rules on whether facts as found by jury constitute taking as a matter of law). Appellants also cite the district courts earlier summary judgment order stating that while exhaustion issues were usually legal ones for the court to resolve, the issue should be resolved by a jury because substantial factual disputes existed.

■ The question of whether a matter is to be decided by the court or a jury

relates not to *how* a case is to be tried before the decisionmaker, but *who* is to be the decisionmaker. *Tyroll v. Private Label Chems., Inc.*, 505 N.W.2d 54, 57 (Minn. 1993). There may be circumstances in which an issue that is to be resolved by the court requires resolution of factual matters. *See id.* at 61 (holding that in determining amount of compensation benefits employer is entitled to in subrogation action brought after pre-trial *Naig* settlement, court rather than jury must make appropriate findings of fact and conclusions of law, although tortfeasor is entitled to jury trial); *Estate of Friedman v. Pierce County*, 112 Wash.2d 68, 768 P.2d 462, 466 (1989) (noting that a number of courts have held certain matters are for court to decide, even though court was required to make factual determinations).

■ It is undisputed that the landowners would be entitled to a jury trial on the issue of the valuation of property in a condemnation action. *Alevizos*, 317 N.W.2d at 359–60. In contrast, the issues of exhaustion and futility of administrative remedies are generally legal questions for the court. *See Leaon v. Washington County*, 397 N.W.2d 867, 874 (Minn.1986). The district court, rather than the jury, properly decided these issues after a court trial, making findings of fact and conclusions of law as necessary. *See Estate of Friedman*, 768 P.2d at 465–66 (holding that issue of futility of administrative remedies is question for court and not jury). The fact that the district court may have initially ruled to the contrary is not determinative, because district courts are not barred from reconsideration of their earlier decisions. *See Walden Bros. Lumber, Inc. v. Wiggin*, 408 N.W.2d 675, 677–78 (Minn.App.1987) (holding that neither res judicata nor law of the case doctrines prevent court from reconsidering issues decided earlier after hearing on writ of attach-

ment), *review denied* (Minn. Aug. 19, 1987). The district court did not err in ruling appellants were not entitled to a jury trial on the issue of exhaustion of administrative remedies.

## II.

■ Having concluded that the court was the proper arbiter of the exhaustion issue, we now consider whether the court correctly determined that appellants were required to first petition for relief from the watershed district. Appellants contend that they could not obtain relief under the administrative remedies for ditch repair and that it would have been futile for them to proceed in that manner. They argue, therefore, that it was necessary and appropriate to bring the judicial action to compel the watershed district to remove obstructions to the water flow in the ditch or to acquire their land by inverse condemnation.

Mandamus is available only to compel performance of a duty clearly required by law and it cannot control judicial discretion. Minn.Stat. 586.01 (2000). We must address whether appellants were required to exhaust their administrative remedies by seeking relief through a petition for repair of the ditch under Minn.Stat. 103E.715 (2000).

■ Generally, a party must exhaust its administrative remedies before seeking judicial relief unless the remedies are inadequate or nonexistent. *Amcon Corp. v. City of Eagan*, 348 N.W.2d 66, 71 (Minn. 1984) (citation omitted). But administrative remedies need not be pursued if it would be futile to do so. *McShane v. City of Faribault*, 292 N.W.2d 253, 256 (Minn. 1980) (citation omitted).

■ There are a variety of reasons for requiring the exhaustion of administrative remedies before pursuing judicial action on

drainage repair issues. First, the legislature created a specialized administrative process for addressing ditch problems. *See Counties of Blue Earth v. Minn. Dept. of Labor Indus.*, 489 N.W.2d 265, 268 (Minn.App.1992) (discussing reasons for requiring exhaustion of administrative remedies). Requiring exhaustion both protect[s] the autonomy of administrative agencies and promot[es] judicial efficiency. *Stephens v. Bd. of Regents of Univ. of Minn.*, 614 N.W.2d 764, 773 (Minn.App. 2000) (citation omitted), *review denied* (Minn. Sept. 26, 2000). In addition, the record produced in the administrative process facilitates judicial review and may also reduce the need to resort to judicial review. *Id.* at 774.

We next examine the administrative remedies available to appellants. The legislature enacted an extensive statutory scheme to address drainage issues in Minnesota. The drainage ditch laws are a complex matrix adopted with the intent of reclaiming agricultural land by disposing of excess water that renders the land untillable. *Murray County Ditch*, 615 N.W.2d at 45 (citation omitted). The laws seek to allocate the costs fairly among the landowners who benefit from the drainage. *Id.* The appellate courts will construe drainage laws liberally to promote the public health and the drainage and reclamation of wet or overflowed land. *Id.* (citation omitted).

Included in the drainage chapter is a section on ditch repair. Minn.Stat. 103E.701.745 (2000). Repair of a drainage system means to restore all or a part of a drainage system as nearly as practicable to the same condition as originally constructed and subsequently improved. *Id.* 103E.701, subd. 1. Interested or affected individuals or entities may petition for repair of a ditch. *Id.* 103E.715, subd. 1; *see id.* 103E.202 (setting out procedure for filing petition). If the drainage authority determines the system needs repair, an engineer is appointed to examine the system and report on the necessary repairs, the estimated costs, and repair plans. *Id.* 103E.715, subd. 2. Where culverts limit the hydraulic capacity of the ditch, the engineering report must also include a hydraulic capacity report. *Id.* 103E.721, subd. 1.

Upon filing of the repair report, a hearing will be scheduled. *Id.* 103E.715, subd. 3. A hearing may be scheduled on the hydraulic capacity report. *Id.* 103E.721, subd. 3. After the hearing, the drainage authority will make findings and order repairs if:

(1)the drainage authority determines from the repair report and the evidence presented that the repairs recommended are necessary for the best interests of the affected property owners; *or*

(2)the repair petition is signed by the owners of at least 26 percent of the property area affected by and assessed for the original construction of the drainage system, and the drainage authority determines that the drainage system is in need of repair so that it no longer serves its original purpose *and the cost of the repair will not exceed the total benefits determined in the original drainage system proceeding.*

*Id.* 103E.715, subd. 4(a) (emphasis added). The costs of repairing the system are apportioned pro rata on all properties and entities previously assessed as receiving benefits from the drainage system. *Id.* 103E.728, subd. 1. If the repair benefits additional properties not originally assessed, there is a procedure for identifying these properties, determining the amount that they benefit, and assessing them. *Id.* 103E.741. If the drainage authority determines that replacement culverts must be installed, those costs may be collected

from the political subdivision. *Id.* 103E.721, subds. 3, 5.

Judicial review is part of the statutory ditch repair scheme. Once the drainage authority has issued a final decision, a party may challenge a decision by the drainage authority dismissing drainage proceedings or establishing or refusing to establish a drainage project. Minn.Stat. 103E.095, subd. 1 (2000). These issues are heard by the district court without a jury. *Id.*, subd. 2 (2000). A party may also appeal issues regarding the amount of benefits, damages, fees, or expenses, or whether environmental and land-use requirements are met under Minn.Stat. 103E.015, subd. 1 (2000). Minn.Stat. 103E.091, subd. 1 (2000). These issues are tried before a jury. *Id.*, subd. 4 (2000).

Besides the statutes directly addressing ditch repair, various other laws protecting wetlands and public waters may come into play. If a repair might affect public waters, the drainage authority must notify the DNR. Minn.Stat. 103E.701, subd. 2 (2000). If the DNR disagrees with the repair depth, there must be a joint determination as to the proper repair depth, with a report to the drainage authority. *Id.* If wetlands are drained or filled as a result of human activity, the Wetland Conservation Act generally requires they be replaced by other wetland areas. Minn. Stat. 103G.222, subd. 1(a) (2000). Exemptions for certain public drainage system projects may apply. Minn.Stat. 103G.2241, subd. 2 (2000).

Appellants contend that this ditch repair process is not available to them as a matter of law. They argue that repairs should not be made if the costs of repair exceed the total benefits determined or redetermined, citing Minn.Stat. 103E.715, subd. 4(a)(2). They contend that repair is not available as a matter of law because pres-ent-day repair costs, estimated to be $400,000 or $500,000, exceed the 1909 determination of benefits, $34,053, and no redetermination of benefits has been made. While they acknowledge that the repair might be made under this provision if the benefits were redetermined to reflect modern-day values, no redetermination of benefits under Minn.Stat. 103E.351 has yet been made.

As to the cap on the cost of the project, we note that it applies when the repair is initiated by a petition signed by owners of 26 of the property area originally affected. Minn.Stat. 103E.715, subd. 4(a)(2). An alternate provision authorizes repair if the drainage authority determines that the repairs recommended are necessary for the best interests of the affected property owners. *Id.*, subd. 4(a)(1). Unlike subdivision 4(a)(2), subdivision 4(a)(1) does not use this cost-versus-benefits analysis. Consequently, the repair is not barred under appellants theory. As to appellants argument that a redetermination of benefits is necessary before filing a petition for repair under Minn.Stat. 103E.715, nothing in the ditch repair statute requires such action. The ditch repair process is available to appellants.

■ Appellants next contend that it would be futile for them to petition for repair, stating that respondents will not issue the necessary wetlands replacement and public water permits and that the watershed district has adopted a policy against redetermination of benefits. We disagree. The evidence supports the district courts determination that appellants failed to show that the agencies have made a final decision on the matter, such that using the administrative process would be futile.

■ Appellants also contend the district court did not apply one of its eviden-

tiary rulings consistently and abused its discretion in other evidentiary rulings. Evidentiary matters are within the trial courts discretion, and appellants must show prejudicial error before an alleged error will justify a new trial. *Kroning v. State Farm Auto. Ins. Co.,* 567 N.W.2d 42, 45–46 (Minn.1997). Appellants have failed to demonstrate any abuse of discretion or prejudicial error in the district courts rulings.

Finally, appellants sought a determination from the district court that the ditch repair was exempt from certain wetlands replacement requirements and public waters mitigation costs, and also sought determination of the applicability of various other water-management-related laws and rules. *See, e.g.,* Minn.Stat. 103G.2241, subd. 2 (2000) (providing exemptions for drainage projects). They contend that the district court erred in declining to address this issue. Again, we agree with the district court that these issues should be determined through the administrative process of a petition for repair.

Appellants have failed to show that the relief sought was required by law so as to make mandamus appropriate. It is essential for them to understand that they must follow the procedures set out by the legislature for resolving drainage issues. Further, the legislature has specified that those who benefit from improved drainage must share in the costs.

## DECISION

The district court correctly decided that appellants have not demonstrated that they have exhausted their administrative remedies or that it would be futile to do so. Appellants may pursue their administrative remedies by petitioning for repair under Minn.Stat. 103E.715 (2000).

**Affirmed.**