**Fatih M. UCKUN, M.D., Appellant,**

v.

**MINNESOTA STATE BOARD OF MEDICAL PRACTICE,**
**Respondent.**

No. A06–1365.

Court of Appeals of Minnesota.

June 26, 2007.

Stuart T. Williams, Alan C. Eidsness, Henson & Efron, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, John S. Garry, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge; TOUSSAINT, Chief Judge; and HUDSON, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Appellant Fatih M. Uckun, M.D., challenges procedures followed by respondent Minnesota Board of Medical Practice in temporarily suspending his medical license. The district court granted respondent's motion to dismiss appellant's claims and denied appellant's motion for partial summary judgment on several of his claims. Because (1) appellant's due process rights were not violated when respondent applied the preponderance of the evidence standard of proof in its proceedings to temporarily suspend appellant's medical license, (2) appellant failed to exhaust all administrative remedies and did not show that exhaustion of such remedies would be futile, and (3) respondent did not violate the Minnesota Government Data Practices Act or the Medical Practice Act when it published appellant's temporary suspension order on its website, we affirm.

## FACTS

Appellant, a medical doctor, was licensed in 1993 by respondent to practice medicine and surgery in Minnesota. In 1997, appellant became the director of Parker Hughes Clinics, a position which he held until 2005. Appellant remains employed by Parker Hughes Clinics.

After a two-year investigation by the Minnesota Attorney General's Office into patient-care complaints, respondent's Complaint Review Committee filed a petition in November 2005 seeking to have appellant's license temporarily suspended. In January 2006, respondent held a hearing on the petition during which appellant was given 20 minutes to make an oral presentation but was not allowed to present live testimony, cross-examine witnesses, or supplement the record. On January 27, 2006, respondent made findings and conclusions and issued an order temporarily suspending appellant's license pending a final decision after a contested case hearing. Respondent found that appellant's continued practice would create a serious risk of harm to others. Respondent published the temporary suspension order on its website, including appellant's name and business address, the nature of the misconduct, and the action taken by respondent.

On February 3, 2006, appellant filed a complaint against respondent in district court, seeking: (1) a declaratory judgment that respondent's use of the probable cause and/or preponderance of the evidence standards of proof rather than the clear and convincing evidence standard of proof in proceedings to temporarily suspend appellant's medical license violated his due process rights; (2) an injunction prohibiting respondent from using the probable cause and/or preponderance of the evidence standard in seeking to permanently suspend appellant's medical license and instead requiring respondent to use the clear and convincing evidence standard of proof in future proceedings, and an injunction ordering respondent to rescind the temporary suspension order and reinstate appellant's license; (3) a declaratory judgment that respondent's publication of the temporary suspension order on its website violated both the Minnesota Government Data Practices Act (MGDPA), Minn.Stat. §§ 13.01–13.90 (2006), and the Medical Practice Act (MPA), Minn.Stat. §§ 147.001–147.37 (2006); (4) an injunction prohibiting respondent from publicly disclosing or revealing any disciplinary proceedings related to appellant; and (5) damages, including costs and attorney fees, for violations of the MGDPA and MPA.

Respondent subsequently moved to dismiss the complaint, and appellant moved

for partial summary judgment on several claims. The district court issued an order granting respondent's motion to dismiss and denying appellant's motion for partial summary judgment. With regard to appellant's claims that respondent had applied the wrong standard of proof and had improperly published the temporary suspension order, the district court concluded that the complaint did not allege a claim on which relief could be granted.

### ISSUES

1. Did respondent violate appellant's due-process rights by applying the preponderance of the evidence standard of proof in the proceeding to temporarily suspend appellant's medical license?

2. Did appellant exhaust his administrative remedies, and if not, did appellant show that exhaustion would be futile?

3. Did respondent violate the Minnesota Government Data Practices Act and the Medical Practice Act when it published appellant's temporary suspension order on its website?

### ANALYSIS

■ In reviewing cases dismissed for failure to state a claim on which relief can be granted, the only question before the reviewing court is whether the complaint sets forth a legally sufficient claim for relief. *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn.1997). Thus, the dismissal of a complaint for failure to state a claim is reviewed de novo. *Bodah v. Lakeville Mo-*

*tor Express, Inc.*, 663 N.W.2d 550, 553 (Minn.2003). "Where ... the [district] court is itself acting as an appellate tribunal with respect to the agency decision, this court will independently review the agency's record." *In re Hutchinson*, 440 N.W.2d 171, 175 (Minn.App.1989), *review denied* (Minn. Aug. 9, 1989).

### I.

■ Appellant argues that respondent violated his due-process rights by improperly applying the preponderance of the evidence standard of proof in its proceedings to temporarily suspend his medical license rather than applying the clear and convincing evidence standard of proof.[1] We disagree.

■ The Fourteenth Amendment to the United States Constitution and article I, section 7 of the Minnesota Constitution provide that no person shall be deprived of life, liberty, or property without due process of law. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). A three-part test set out in *Mathews* guides the determination of the minimum standard of proof necessary to satisfy due process: 1) the private interest affected, 2) the risk of erroneous deprivation of the interest, and 3) the government's interest including any

---

1. Appellant also argues that respondent erroneously applied the probable cause standard of proof. In determining whether the evidence supported the petition to temporarily suspend appellant's medical license, respondent first applied the probable cause standard of proof, concluding that "the [committee] met its burden in showing that a temporary suspension must issue." But "[i]n an exercise of caution," respondent also applied the

higher standard of proof and found that "evidence presented by the Committee has shown by a preponderance of the evidence that [appellant] has violated [Minn.Stat. § 147.091 (2004)] and that his continued practice poses a serious risk of harm to the public." Therefore, we need not address appellant's argument that respondent improperly applied the probable cause standard of proof to the temporary suspension proceedings.

additional burdens it would incur. *Id.* at 335, 96 S.Ct. at 903. " 'The function of a standard of proof ... is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' " *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979) (quotation omitted). "The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Id.*

First, Minnesota law supports our conclusion that respondent properly applied the preponderance of the evidence standard of proof in its temporary suspension of appellant's license. Respondent is authorized to temporarily suspend the license of a physician without a hearing if the board finds that "the physician has violated a statute or rule which the board is empowered to enforce and continued practice by the physician would create a serious risk of harm to the public." Minn. Stat. § 147.091, subd. 4 (2006). Minnesota rules provide the standard of proof applicable in administrative proceedings, including license revocation proceedings. The preponderance of the evidence standard applies "unless the substantive law provides a different burden or standard." Minn. R. 1400.7300, subp. 5 (2005). Minnesota statutory law does not provide a different standard for respondent's discipline of medical doctors. Minn.Stat. § 147.091 (2006).

Furthermore, to date, Minnesota case law has not addressed the specific question of the correct standard to be applied in temporary suspensions of physician licenses pending contested case hearings. Minnesota law, however, does not support the higher clear and convincing evidence standard at this stage of the disciplinary hearings, as Minnesota has rejected application of the higher clear and convincing evidence standard at the contested case hearings for both dentists and physicians. *In re Wang,* 441 N.W.2d 488, 489 (Minn. 1989) (affirming one-year suspension of license to practice dentistry using preponderance standard); *In re Friedenson,* 574 N.W.2d 463, 466 (Minn.App.1998) (affirming preponderance standard in medical license suspension), *review denied* (Minn. Apr. 30, 1998).[2]

Appellant contends that both his property and liberty interests were significantly impacted by respondent's decision to temporarily suspend his medical license and that application of the three-part *Mathews* test mandates use of the clear and convincing evidence standard of proof in temporary suspension proceedings. We conclude there is no legal basis to support appellant's argument because the *Mathews* factors do not weigh in appellant's favor, particularly at this stage of the disciplinary proceedings.

**2.** Appellant argues that neither *Wang* nor *Friedenson* involved a challenge to the preponderance of the evidence standard of proof on due process grounds, and thus both cases are distinguishable. While we recognize that *Wang* involved a challenge to the standard of proof on equal protection grounds, we agree with respondent that it is implausible to believe that *Friedenson* involved a challenge to the preponderance of the evidence standard of proof on anything other than due process grounds. In addition, we decline to apply, by analogy, the clear and convincing evidence standard required in attorney disciplinary proceedings. *See In re Gillard,* 271 N.W.2d 785, 805 n. 3 (Minn.1978) (applying clear-and-convincing standard of proof in attorney disciplinary proceedings). The Minnesota Supreme Court previously rejected this argument in a dental-license revocation action, noting that attorney discipline is unique because it involves the administration of the judicial system. *In re Wang,* 441 N.W.2d 488, 492 n. 5 (Minn.1989).

With regard to the private interest affected, we recognize that appellant has a significant interest in his medical license and that depriving appellant of such license may result in a monetary loss as well as a loss of professional reputation. Indeed, the Minnesota Supreme Court noted in *Wang* the seriousness of "attacking a person's professional and personal reputation and character and seeking to impose disciplinary sanctions," stating that "in all professional disciplinary matters, the finder of fact, bearing in mind the gravity of the decision to be made, will be persuaded only by evidence with heft." 441 N.W.2d at 492. But the seriousness of the deprivation here is lessened by the fact that appellant's license has only been temporarily suspended pending a final disciplinary hearing, and thus appellant has not been permanently deprived of the interest affected.

We also consider the risk of an erroneous result. "[P]roceedings that 'employ imprecise substantive standards that leave determinations unusually open to subjective values of the judge' magnify the risk for erroneous deprivation of private interests." *SooHoo v. Johnson,* 731 N.W.2d 815, 823 (Minn.2007) (quoting *Santosky v. Kramer,* 455 U.S. 745, 762, 102 S.Ct. 1388, 1399, 71 L.Ed.2d 599 (1982)). The record indicates that prior to filing a petition seeking to have appellant's license temporarily suspended, the Minnesota Attorney General's Office conducted a two-year investigation into patient-care complaints against appellant. In addition, the record shows that appellant was allowed to make an oral argument during the hearing on the petition. Most importantly, however, the risk of an erroneous deprivation of appellant's licensing privileges through

this temporary suspension can be corrected if appellant's license is reinstated after the contested case proceeding. Therefore, the procedure afforded appellant did not create an unacceptable risk of erroneous deprivation of his license to practice medicine.

Finally, *Mathews* directs us to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335, 96 S.Ct. at 903. It is true that requiring an increased standard of proof during proceedings for the temporary discipline of medical practitioner's licenses would not have a significant fiscal impact on the state and would not impose additional administrative burdens. But the state's interest in the public function involved (i.e., assuring a high quality of medical care and protecting the public from serious risk or injury resulting from incompetent or irresponsible medical practitioners) is substantial. Indeed, in creating the Medical Practice Act, the legislature expressly stated that the "primary responsibility and obligation of [respondent] is to protect the public." Minn.Stat. § 147.001 (2006).[3] Additionally, the legislature granted respondent the authority to impose disciplinary action against any physician, in part, for engaging in conduct likely to harm the public; demonstrating disregard for a patient's health, welfare or safety; and engaging in medical practice that is professionally incompetent so as to unnecessarily endanger a patient's life, health, or safety. Minn.Stat. § 147.091, subd. 1(g) (2006).

Therefore, we conclude, after analyzing and balancing the three *Mathews* factors,

---

**3.** Section 147.001 further provides that "[i]n the interest of public health, safety, and welfare, and to protect the public from the unprofessional, improper, incompetent, and un-lawful practice of medicine, it is necessary to provide laws and regulations to govern the granting and subsequent use of the license to practice medicine."

that respondent did not violate appellant's right to due process by utilizing the preponderance of the evidence standard of proof for the temporary suspension of appellant's medical license.

In support of his position, appellant also identifies other state courts that have concluded that due process requires proof by clear and convincing evidence in medical disciplinary proceedings. *See, e.g., In re Setliff,* 645 N.W.2d 601, 605 (S.D.2002) (stating that in matters concerning revocation of professional license, appropriate standard of proof to be utilized by agency is clear and convincing evidence); *Nguyen v. State, Dep't of Health Med. Quality Assurance Comm'n,* 144 Wash.2d 516, 29 P.3d 689, 697 (2001) (stating that "constitutional minimum standard of proof in a professional disciplinary proceeding for a medical doctor must be something more than a mere preponderance," and remanding to conduct further proceedings under clear-and-convincing standard of proof). Other jurisdictions, however, have held that due process is satisfied in medical disciplinary proceedings by the application of the preponderance of the evidence standard of proof. *See, e.g., N.D. State Bd. of Med. Exam'rs–Investigative Panel B v. Hsu,* 726 N.W.2d 216, 229–30 (N.D.2007) (applying *Mathews* and concluding that preponderance of evidence standard for medical disciplinary proceedings satisfied due process). We conclude the *Hsu* court's reasoning to be more persuasive because of its similar application of the *Mathews* factors and because the decision comports with Minnesota precedent. Moreover, appellant does not cite, and we are unaware of, any case expressly adopting the clear-and-convincing evidence standard as the appropriate standard of proof in *temporary* suspension proceedings.

For these reasons, we conclude that respondent did not erroneously apply the preponderance of the evidence standard of proof to appellant's temporary suspension proceedings and therefore the district court did not err in its dismissal of those claims.

## II.

Appellant seeks an injunction prohibiting respondent from using the preponderance of the evidence standard of proof and requiring respondent to apply the clear and convincing evidence standard of proof in the disciplinary hearing for a final order on suspension of his medical license. The district court determined that the preponderance of the evidence standard was applicable to both temporary and permanent suspension proceedings and dismissed the request for an injunction.

■ Respondent argued below and argues on this appeal that appellant's claim for an injunction is barred by the doctrine of exhaustion of administrative remedies. The district court did not reach the exhaustion issue, having concluded that appellant's claim failed on the merits. We conclude that appellant has not exhausted available administrative remedies and this court cannot grant the requested relief.

■ It is a "long-settled rule that no one is entitled to injunctive protection against the actual or threatened acts of an administrative agency until" all administrative remedies have been exhausted, unless exhaustion of administrative remedies will cause "imminent and irreparable harm." *Thomas v. Ramberg,* 240 Minn. 1, 4–5, 60 N.W.2d 18, 20 (1953); *see also Amcon Corp. v. City of Eagan,* 348 N.W.2d 66, 71 (Minn.1984) (noting that generally party "must first exhaust the administrative remedies available before bringing an action for judicial review"); *City of Richfield v. Local No. 1215,* 276 N.W.2d 42, 51 (Minn.1979) (stating "[i]t is fundamental that before judicial review of

administrative proceedings will be permitted, the appropriate channels of administrative appeal must be followed"). This requirement has several purposes, including to protect the autonomy of administrative agencies created by the legislature to resolve particular problems, to promote judicial efficiency, to produce a record during the administrative process that facilitates judicial review, and to potentially reduce the need to resort to judicial review. *Zaluckyj v. Rice Creek Watershed Dist.*, 639 N.W.2d 70, 74–75 (Minn.App. 2002), *review denied* (Minn. Apr. 16, 2002). But "administrative remedies need not be pursued if it would be futile to do so." *McShane v. City of Faribault*, 292 N.W.2d 253, 256 (Minn.1980); *see also Local No. 1215*, 276 N.W.2d at 51 (stating that "[t]he doctrine of exhaustion of administrative remedies is not applicable where it would be futile to seek such redress"). In such cases, a party may ask the courts for redress. 276 N.W.2d at 51. The issue of exhaustion and futility generally present legal issues for the appellate court to review. *Zaluckyj*, 639 N.W.2d at 74.

Before issuing a final order suspending a physician's license, respondent is required to schedule a disciplinary hearing under the Administrative Procedure Act (APA), Minn.Stat. §§ 14.001–14.69 (2006). During the disciplinary hearing, physicians are afforded the opportunity to present witnesses and cross-examine witnesses. *See* Minn.Stat. §§ 147.091, subd. 4, 14.50, 14.60; Minn. R. 1400.7200, 1400.7800 (2005). A physician must be given notice of the hearing at least 20 days before it is to occur, and the hearing must be scheduled to begin within 30 days after the issuance of the temporary suspension order. Minn.Stat. § 147.091, subd. 4. All parties may bring motions to request orders from the administrative law judge (ALJ). Minn. R. 1400.6600 (2005). Following receipt of the ALJ's report, and

after "an opportunity has been afforded to each party adversely affected to file exceptions and present argument to a majority of the officials who are to render the decision," respondent must make its final decision. Minn.Stat. § 14.61; Minn. R. 1400.8200 (2005). When respondent determines that a physician has violated a provision of sections 147.01 to 147.22, it has a wide array of actions it may take to address the violation, ranging from suspension or revocation of a license to reprimand or civil penalties. Minn.Stat. § 147.141. A person aggrieved by a final disciplinary decision of respondent may petition for judicial review of that decision. Minn.Stat. §§ 14.63, 147.151.

At the present stage of appellant's disciplinary proceedings he continues to have the opportunity to argue that any alleged misconduct should be proven by clear and convincing evidence. He may move for relief prior to the hearing, submit written exceptions or oral argument for relief after the ALJ's report, and file an appeal to this court after respondent issues a final decision. Accordingly, there are additional administrative remedies available to appellant that he has not yet exhausted and injunctive relief would be premature.

■ But appellant contends that it would be futile to argue this issue during the permanent disciplinary proceedings because respondent has already applied the lesser preponderance of the evidence standard during appellant's temporary suspension proceedings. We disagree. As respondent notes, the futility exception only applies when the administrative board has "unequivocally committed" itself to a position on an issue. *State Bd. of Med. Exam'rs v. Olson*, 295 Minn. 379, 387, 206 N.W.2d 12, 17 (1973); *Ellingson Assocs., Inc. v. Keefe*, 410 N.W.2d 857, 860 (Minn. App.1987). Here, respondent has not com-

mitted itself to applying the same standard of proof during appellant's ongoing disciplinary proceedings. In fact, appellant brought a motion to the ALJ seeking an order declaring that the clear and convincing evidence standard of proof should be applied to the ongoing contested case proceeding; a step one is unlikely to take if respondent had already "unequivocally committed" itself to the preponderance of the evidence standard. Therefore, we conclude that appellant has failed to show that respondent has "unequivocally committed" itself to the standard of proof to be applied in appellant's ongoing disciplinary proceedings such that using the administrative process would be futile.

## III.

Appellant argues that respondent violated both the MGDPA and the MPA by publishing the temporary suspension order on its website. Specifically, the temporary suspension order concluded that appellant had:

1. Engaged in advertising that is false or misleading . . . ;

2. Engaged in unethical conduct; conduct likely to deceive, defraud or harm the public, or demonstrating a willful or careless disregard for the health, welfare or safety of a patient; and in medical practice that is professionally incompetent in that it may create unnecessary danger to any patient's life, health, or safety . . . ; [and]

3. Engaged in unprofessional conduct, including by departing from or failing to conform to the minimal standards of acceptable and prevailing medical practice. . . .

Appellant argues that the order was private and confidential data under the MGDPA and the MPA and thus was barred from disclosure. Respondent contends that the temporary suspension order is classified as public data. The parties dispute the construction to be given to the relevant statutes.

Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn. 1998). Application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn. 1996).

Generally, the Minnesota Government Data Practices Act, Minn.Stat. §§ 13.01–13.90 (2006), protects from public disclosure only private or confidential data on individuals if classified as such by statute. Minn.Stat. § 13.03, subd. 1 (2006). All other data is public. "Private data on individuals" is defined as data which is made "not public" by statute, and is "accessible to the individual subject of that data." Minn.Stat. § 13.02, subd. 12 (2006). "Confidential data on individuals" is data made "not public" by statute and is "inaccessible to the individual." Minn.Stat. § 13.02, subd. 3 (2006). "Public data on individuals" is data which is accessible to the public. Minn.Stat. § 13.02, subd. 15 (2006).

The MGDPA specifically classifies data generated by a "licensing agency" as "public data." Minn.Stat. § 13.41, subd. 5 (2006). This includes "[l]icensing agency minutes, application data on licenses except nondesignated addresses, orders for hearing, findings of fact, conclusions of law and specification of the final disciplinary action contained in the record of the disciplinary action." *Id.* In fact where there is a public hearing concerning the disciplinary action, "[t]he entire record concerning . . . disciplinary proceedings is public data." *Id.* Although "data collected by state agencies as part of an active investi-

gation undertaken for the purpose of the commencement or defense of" an administrative proceeding or other pending civil legal action is deemed confidential, an agency may make that data "accessible to any person, agency or the public if the agency ... determines that the access will aid the law enforcement process, promote public health or safety or dispel widespread rumor or unrest." Minn.Stat. § 13.39, subd. 1, 2(a); *Westrom v. Minn. Dep't of Labor,* 686 N.W.2d 27, 34–36 (Minn.2004) (determining that orders released by agency reflected data collected during investigation and was civil investigative data).

■ Here, the record indicates that respondent collected data on appellant over a two-year period for purposes of instigating administrative proceedings against him. Thus, the data is classified as confidential under section 13.39, subdivision 2(a). But respondent published the temporary suspension order on its website after specifically finding that appellant's continued practice posed a serious risk of harm to the public. Accordingly, we conclude that even though the data published by respondent was confidential, respondent was permitted to publish the data so as to promote public health and safety.

■ The Medical Practice Act, Minn. Stat. §§ 147.001–.37 (2006), generally protects from public disclosure "all communications or information received by or disclosed to the board relating to any person or matter subject to its regulatory jurisdiction." *Id.,* § 147.01, subd. 4. Although the MPA classifies this information as confidential and privileged, "[i]f the board imposes disciplinary measures of any kind, whether by contested case or by settlement agreement, the name and business address of the licensee, the nature of the misconduct, and the action taken by the board are public data." *Id.*

Appellant argues that the phrase "disciplinary measures of any kind" does not include interim disciplinary actions such as a temporary suspension order because the phrase is qualified by the limiting phrase "whether by contested case or by settlement agreement." Therefore, appellant contends that the language "disciplinary measures of any kind" refers *only* to either a contested case hearing or a settlement agreement, and any other reading would effectively eliminate the phrase "whether by contested case or by settlement agreement." We disagree.

"When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (citation omitted). "A statute should be interpreted, whenever possible, to give effect to all of its provisions; 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.'" *Id.* (quoting *Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999)). And "[w]e are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.*

Because section 147.01, subdivision 4(b) is subject to more than one reasonable interpretation, we first consider the language of the statute itself, giving effect to all of its provisions. Appellant reads the word "whether" as a word of limitation. A number of courts, however, have reasoned that the word "whether," when preceded by a general term, is not a word of limitation. *See, e.g., Galbreath v. Gulf Oil Corp.,* 294 F.Supp. 817, 824 (D.Ga.1968) (stating that "[t]he cases hold without exception that words following 'whether' do not restrict the meaning to any following terms;

rather, they enlarge upon it"), *aff'd,* 413 F.2d 941 (5th Cir.1969); *State ex rel. Berra v. Sestric,* 349 Mo. 182, 159 S.W.2d 786, 789 (1942) (stating that "the word whether, neither in common parlance, nor in legal phraseology, has ever had the force of a videlicet"). This interpretation of the word "whether," following as it does the broad and general phrase "disciplinary measures of any kind," emphasizes and makes clear that contested cases and settlement agreements fall within "disciplinary measures of any kind." The legislature intended to include discipline whether it was litigated or resolved by agreement of the parties.

We also consider surrounding sections so as to avoid inconsistent interpretations. This interpretation of the statute is also consistent with the MPA mandate that respondent, at least annually, "shall publish and release to the public a description of *all* disciplinary measures taken by the board. The publication must include, for each disciplinary measure taken, the name and business address of the licensee, the nature of the misconduct, and the disciplinary measure taken by the board." Minn. Stat. § 147.02, subd. 6 (2006) (emphasis added). No limitation is reasonably read into this requirement to publish the very data appellant seeks to protect. Finally, appellant's interpretation of section 147.01, subdivision 4, would lead to absurd results because respondent would be prohibited from informing the public of the temporary suspension of a physician's license, thereby endangering the public. Accordingly, we conclude that the phrase "disciplinary measures of any kind" is not limited to only contested case hearings and settlement agreements, but also includes interim disciplinary actions such as temporary suspension orders.

In sum, we conclude that disclosure of the data was authorized under the MGDPA and the MPA. Respondent found that appellant posed a serious risk to the public and was thereby permitted to make the data accessible to the public under the MGDPA. Under the MPA, the temporary suspension order fell within any disciplinary measure and the order was properly limited in scope. The publication disclosed only the "nature of the misconduct" and a description of "the disciplinary measure taken by the board." The "nature" of appellant's misconduct followed the statutory grounds which respondent found appellant had violated and contained no other findings or details. Furthermore, the published order briefly and accurately described the disciplinary measures taken by respondent, and nothing more. Therefore, the district court correctly dismissed appellant's claim that respondent had improperly published the temporary suspension order for failure to state a claim on which relief can be granted.

## DECISION

We conclude that the district court did not err by granting respondent's motion to dismiss appellant's claims. Respondent's application of the preponderance of the evidence standard of proof at the temporary suspension hearing did not violate appellant's due process rights. Appellant has not exhausted his administrative remedies and, in his pending administrative proceeding, may request application of the clear and convincing evidence standard or proof during the permanent suspension hearing. Respondent complied with the Minnesota Government Data Practices Act and the Medical Practice Act by publishing appellant's temporary suspension order on its website.

**Affirmed.**