**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0632**

In the Matter of the Complaint of
Troy Scheffler Regarding the Committee to Elect Josh Heintzeman.

**Filed January 12, 2026
Reversed and remanded
Worke, Judge**

Campaign Finance and Public Disclosure Board

Troy Scheffler, Merrifield, MN (pro se relator)

R. Reid LeBeau II, Chalmers, Adams, Backer, and Kaufman, St. Paul, Minnesota (for respondents Joshua M. Heintzeman and Committee to Elect Josh Heintzeman)

Keith Ellison, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, St. Paul, Minnesota (for respondent Campaign Finance and Public Disclosure Board)

Considered and decided by Worke, Presiding Judge; Cochran, Judge; and Jesson, Judge.[*]

**SYLLABUS**

Under Minnesota Statutes section 211B.04, subdivision 1(a) (2024), a disclaimer is "prominently include[d]" on campaign material when it is conspicuous and readily noticeable to the electorate that is the intended recipient of the material.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

**WORKE**, Judge

In this appeal, relator Troy Kenneth Scheffler contests respondent Campaign Finance and Public Disclosure Board's decision to dismiss, at the prima facie stage of its analysis, three of the four claims in his complaint alleging violations of the requirement in Minnesota Statutes section 211B.04, subdivision 1(a), that campaign material "prominently include" a disclaimer. Because we conclude that Minnesota Statutes section 211B.04, subdivision 1(a), requires that the disclaimer on campaign material must be conspicuous and readily noticeable to the electorate that is the intended recipient of the material to be "prominently include[d]" within the meaning of this provision, we reverse and remand for application of this standard to determine whether the complaint states a prima facie violation with respect to the dismissed claims.

## FACTS

On September 4, 2024, relator Troy Kenneth Scheffler filed a complaint with respondent Campaign Finance and Public Disclosure Board (the board), claiming that, during the week of July 22, 2024, respondent Joshua M. Heintzeman violated Minn. Stat. § 211B.04, subd. 1(a) (2024), by erecting four outdoor 68-inch-by-96-inch political-campaign signs that did not "prominently include the name and address of the person or committee causing the material to be prepared or disseminated in a disclaimer." Scheffler claimed that the fourth sign lacked any disclaimer and that the other three signs (the three signs) had a campaign bumper sticker affixed, of which the disclaimer was a minor part of the sticker. In his complaint, Scheffler stated: "None of these signs

2

prominently display any disclaimer as required by Minn. Stat. § 211B.04." Scheffler attached pictures of the signs to the complaint.

The board issued a prima facie determination, as required by statute, stating:

> The purpose of the disclaimer requirement is to identify the entity that paid for, prepared, or disseminated the campaign material. If campaign material includes a disclaimer that is substantially in the form required by statute, and it is visible and legible, the disclaimer is sufficiently prominent[,] and the purpose has been satisfied. A disclaimer on an outdoor sign need not be legible from a significant distance, such as by a passing motorist, in order to be prominently included.

The board concluded that the three signs "include[d] a visible disclaimer, and the complaint does not allege that those disclaimers are not substantially in the form required by Minnesota Statutes section 211B.04, subdivision 1," and it dismissed the claims regarding those signs within the complaint in September 2024. The board determined that the allegations related to the fourth sign, which lacked an affixed bumper sticker, state a prima facie violation.

On April 8, 2025, the board ultimately determined that the fourth sign violated the disclosure statute. The board assessed a civil penalty of $100 against respondent Committee to Elect Josh Heintzeman. This provided a full adjudication of Scheffler's complaint.

On April 18, 2025, Scheffler filed a petition for a writ of certiorari, challenging the board's dismissal of his three claims. This appeal followed.

**ISSUES**

I.   Was Scheffler's appeal timely?

II.  What does Minnesota Statutes section 211B.04, subdivision 1(a), require for a disclaimer to be "prominently include[d]" in campaign material?

**ANALYSIS**

We begin our analysis with an overview of the board and the procedures it uses to review and resolve complaints. The board has the authority to investigate state-level candidates and political entities[1] for alleged violations of campaign finance and public disclosure requirements under Minnesota Statutes sections 10A.01-.52 (2024), disclaimer requirements on campaign material under Minnesota Statutes section 211B.04 (2024), campaign expenditure requirements under Minnesota Statutes section 211B.12 (2024), and corporate political contribution regulations under Minnesota Statutes section 211B.15 (2024). Minn. Stat. § 10A.022, subd. 3(a) (2024); *see also* Minn. Stat. § 10A.02 (enabling statute). A person may submit a written complaint to the board alleging a violation within the board's jurisdiction. Minn. Stat. § 10A.022, subd. 3(a)(1); Minn. R. 4525.0200, subp. 1 (2025).

Once the board receives the complaint, it must determine whether the complaint states a prima facie violation—whether the facts alleged, if true, violate the law. Minn. Stat. § 10A.022, subd. 3(c); *see also* Minn. Stat. § 10A.01, subd. 32a (defining

---

[1] The board focuses on investigating alleged or potential violations by state-level candidates and political entities within Minnesota. *See* Minn. Stat. § 10A.01, subd. 10 (2024). The Office of Administrative Hearings reviews alleged violations of Minn. Stat. §§ 211A.01-.14 (2024) and Minn. Stat. §§ 211B.01-.37 (2024) with local-level candidates. *See* Minn. Stat. § 211B.32.

prima facie determination).  The board must dismiss the complaint without prejudice if it does not find a prima facie violation.  Minn. Stat. § 10A.022, subd. 3(c); Minn. R. 4525.0210, subp. 2 (2025).

If the board does find a prima facie violation, it must conduct a probable cause determination.  Minn. Stat. § 10A.022, subd. 3(d); Minn. R. 4525.0210, subps. 2-3a (2025).  Before determining probable cause, the board affords the complainant and respondent an opportunity to be heard regarding whether probable cause exists.  Minn. Stat. § 10A.022, subd. 3(d).  If probable cause does not exist, the board must dismiss the complaint.  Minn. Stat. § 10A.022, subd. 3(e); Minn. R. 4525.0210, subp. 4 (2025).

If the board determines probable cause exists, it must determine whether the alleged violation warrants a formal investigation.  Minn. R. 4525.0210, subp. 5 (2025).  If the board determines that the alleged violation does not require a formal investigation, it may dismiss the complaint without prejudice or order a "staff review under [Minn. R.] 4525.0320." Minn. R. 4525.0210, subp. 6 (2025).  In determining whether to dismiss the complaint or order a staff review,

> the board must consider the type of possible violation, the magnitude of the violation if it is a financial violation, the extent of knowledge or intent of the violator, the availability of board resources, whether the violation has been remedied, and any other similar factor necessary to decide whether to proceed with a staff review.

*Id*.  A staff review is a process conducted by the "executive director [who] reviews information and works informally with a respondent to determine whether a violation has

5

occurred and to determine how any identified violation should be resolved." Minn. R. 4525.0320, subp. 1 (2025).

If the board orders an investigation, it must notify the parties and provide the respondent an opportunity to be heard before the board determines whether a violation occurred. Minn. Stat. § 10A.022, subd. 3(e); Minn. R. 4525.0210, subp. 5; Minn. R. 4525.0340, subp. 3 (2025). This determination is based on a preponderance-of-the-evidence standard. Minn. R. 4525.0210, subp. 5. If a violation occurred, the board may impose a statutory civil penalty. Minn. Stat. § 10A.022, subd. 2(a); *see also* Minn. R. 4525.0500, subp. 2a (2025) (identifying factors the board considers when imposing a civil penalty).

Having laid this groundwork, we turn to examining the issues raised in this appeal.

## I. Timeliness

Heintzeman claims that we should not review Scheffler's appeal because it is untimely.[2] Heintzeman did not move this court to dismiss the appeal as untimely. However, "we lack jurisdiction to consider an untimely appeal. *Twp. of Honner v. Redwood Cnty.*, 518 N.W.2d 639, 641 (Minn. App. 1994), *rev. denied* (Minn. Sept. 16, 1994). And a party may challenge appellate jurisdiction at any time. *See*

---

[2] We are unpersuaded by Heintzeman's additional argument that the appeal is barred for failure to exhaust administrative remedies. *See* Minn. Stat. § 10A.022, subd. 3(c). In reviewing the record, we fail to see what more Scheffler could have revised or included in the complaint. *See Uckun v. Minn. State Bd. of Med. Prac.*, 733 N.W.2d 778, 786 (Minn. App. 2007) (stating that if doing so would be futile, administrative remedies need not be pursued).

*Speyer v. Savogran Co.*, 124 N.W.2d 827, 829 (Minn. 1963). Thus, we review whether Scheffler's appeal was timely.

"A petition for a writ of certiorari . . . must be filed with the court of appeals and served . . . not more than 30 days after the party receives the final decision and order of the agency." Minn. Stat. § 14.63 (2024). Certiorari is ordinarily not available for interlocutory or intermediate orders. *In re Application by City of Rochester for Adjustment of Serv. Area Boundaries*, 524 N.W.2d 540, 541 (Minn. App. 1994). To be appealable, the board's decision must be a "final determination of the parties' rights, rather than an interlocutory or intermediate order." *See id.* "[T]he thrust of the rules governing the appellate process is that appeals should not be brought or considered piecemeal." *Emme v. C.O.M.B., Inc.*, 418 N.W.2d 176, 179 (Minn. 1988).

In this case, the order dismissing Scheffler's claims relating to the three signs for failure to show a prima facie violation was an interlocutory, nonfinal order that did not resolve the entire complaint. Thus, the time to appeal started to run on April 8, 2025, the day Scheffler received the board's final order and decision resolving the entire complaint. Scheffler petitioned for a writ of certiorari on April 18, 2025. This is within the statutory time limit to appeal. Scheffler's appeal was timely.

## II. Prominently Included Disclaimers Under Minn. Stat. § 211B.04, Subd. 1(a)

Scheffler argues that the board erred in its interpretation of Minn. Stat. § 211B.04, subd. 1(a), because it failed to consider or define the statutory requirement that the disclaimer be "prominently include[d]." "Although we accord deference to agency decisions, the interpretation of statutes and administrative regulations is a legal question,

which we review de novo." *In re MCEA for Commencement of an Env't Assessment Worksheet*, 980 N.W.2d 175, 184 (Minn. 2022). When a definition is not provided in a statute, statutory interpretation often begins by using dictionary definitions to determine the term's "plain and ordinary meaning." *In re Maltreatment Determination of Restorff*, 932 N.W.2d 12, 19 (Minn. 2019); *see Lewison*, 929 N.W.2d at 450 (using dictionary definition to interpret word not defined in chapter 211B).

"We do not defer to an agency's interpretation of a statute when the statute is unambiguous." *MCEA*, 980 N.W.2d at 184. A statute is ambiguous if it is unclear or susceptible to multiple, reasonable interpretations. *See In re Cities of Annandale & Maple Lake NPDES/SDS Permit Issuance*, 731 N.W.2d 502, 517 (Minn. 2007). "[W]hether words or phrases are ambiguous does not depend on a reading of those words or phrases in isolation, but relies on the meaning assigned to the words or phrases in accordance with the apparent purpose of the regulation as a whole." *Id.* Courts should interpret statutes to ascertain and effectuate the legislature's intention. Minn. Stat. § 645.16 (2024).

Under Minnesota law,

> A person who participates in the preparation or dissemination of campaign material . . . that does not *prominently include* the name and address of the person or committee causing the material to be prepared or disseminated in a disclaimer substantially in the form provided [in this section] is guilty of a misdemeanor.

Minn. Stat. § 211B.04, subd. 1(a) (emphasis added). "'Campaign material' means any literature, publication, or material that is disseminated for the purpose of influencing voting . . . except for news items or editorial comments by the news media." Minn. Stat.

8

§ 211B.01, subd. 2. The purpose of Minnesota's disclaimer law is to inform "the electorate about the election-related spending of certain political actors." *See Lewison*, 929 N.W.2d at 449. There is currently no statute or caselaw defining or clarifying the phrase "prominently include" within Minnesota Statutes section 211B.04, subdivision 1(a).

The board interpreted Minnesota Statutes section 211B.04, subdivision 1(a), without citing any authority, to require that the disclaimer be "visible and legible" but not "legible from a significant distance, such as by a passing motorist." This interpretation is deficient. The board's interpretation indicates only when the disclaimer need *not be* legible, not when it *must be* legible, and it omits the statute's mandatory requirement of when the disclaimer is "prominently include[d]." Because this vital phrase "prominently include" has no definition in statute or our prior caselaw, we must determine whether the plain language of the phrase is unambiguous, and if so, apply it. *St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 40 (Minn. 1989).

Looking at plain language, *The American Heritage Dictionary of the English Language* 1409-10 (5th ed. 2011), defines "prominent" as "[i]mmediately noticeable; conspicuous."[3] *See also Black's Law Dictionary* 386 (11th ed. 2019) (defining "conspicuous" as "clearly visible or obvious"). The phrase is unambiguous: under plain

---

[3] Although not necessary to our plain-language analysis, we note that our interpretation is consistent with the purposes of the campaign disclosure requirement. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 367 (2010) (concluding federal disclaimer requirements are to "provid[e] the electorate with information about the sources of election-related spending[,]" and preventing "independent groups [from] running election-related advertisements while hiding behind dubious and misleading names." (quotation omitted)).

language, an item is prominently included when it is conspicuous and readily noticeable to the intended recipient.

Accordingly, under Minnesota Statutes section 211B.04, subdivision 1(a), a disclaimer is "prominently include[d]" on campaign material when it is conspicuous and readily noticeable to the electorate that is the intended recipient of the material. Because the board did not have the benefit of our interpretation, we remand for the board to reevaluate whether Scheffler's complaint asserts a prima facie violation with respect to the three signs under the correct legal standard.

## DECISION

Because we conclude that a disclaimer on campaign material must be conspicuous and readily noticeable to the electorate that is the intended recipient of the material to comply with Minnesota Statutes section 211B.04, subdivision 1(a), we reverse and remand for application of this standard to determine whether the complaint states a prima facie violation with respect to the dismissed claims.

**Reversed and remanded.**